UNITED STATES of America,
Plaintiff-Appellee,

v.

Carlos Sierra BATENCORT,
Defendant-Appellant.

No. 78–5663
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 9, 1979.

Mark Vela, Houston, Tex. (Court-appointed), for defendant-appellant.

J. A. Canales, U.S. Atty., John M. Potter, George A. Kelt, Jr., Ronald G. Woods, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge.

Carlos Sierra Batencort was charged in a two-count indictment with the importation into the United States of a controlled substance and with the possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 952(a). Following a jury trial, Batencort was acquitted on count II, possession with intent to distribute, and was convicted on count I, importation. He received a sentence of four years, to be followed by a special parole term of three years. On appeal Batencort argues that the District Court committed reversible error in admitting hearsay and in charging the jury with respect to deliberate ignorance. We affirm.

I. *Facts*

On May 22, 1978, Batencort arrived at Houston Intercontinental Airport on a flight from Guatemala. He carried a Spanish passport issued in the name of Louis Ballbe Carreres. Batencort entered the

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409.

customs line with his single piece of luggage, a suitcase, opened for inspection. Customs inspector Sandra Chipley inquired as to where Batencort lived and where he was going. Batencort responded that he lived in Spain, although he in fact lived in Colombia, and that he was destined for New York. However he subsequently represented that his destination was Houston. Inspector Chipley, concerned that she was not communicating properly with Batencort, who spoke only Spanish, requested the assistance of Customs Inspector Vance Cook. Upon further questioning of Batencort, it was learned that he had been in Guatemala, although the passport also indicated that Batencort had been in Colombia which, according to Chipley, is considered a "source country" for certain prohibited drugs. During this questioning Batencort became increasingly nervous. Inspectors Chipley and Cook decided that a more thorough inspection of Batencort's suitcase should be conducted, at which point it was discovered that the suitcase might have a false bottom. Batencort was led into a secondary inspection room where he was questioned further. Inspector Cook took the suspect suitcase into still another room and drilled some holes in the baggage. A field test then was performed on the substance found in the suitcase side, with the result being positive for cocaine.

Batencort was read his constitutional rights in Spanish and he responded that he knew his rights. He informed the customs officials that the name and date of birth on the passport were incorrect. He further admitted that "he knew what he had gotten himself into" and that "he had something in the suitcase that he shouldn't but he didn't know exactly what." *Transcript* at 90, 96. Finally Batencort advised the authorities that he had been given $800 for expenses and promised $2000 upon delivery of the suitcase.

At trial Batencort, a street peddler in Colombia, testified that he had been hired, by an individual he met on the street, to bring merchandise, such as television sets and other appliances, from the United States to Colombia. To facilitate this transaction, Batencort testified, his Colombian employer requested his photograph and then supplied him with a completed false passport.

## II. *Discussion*

■ Batencort first argues certain testimony about his statements in Spanish should have been excluded as hearsay where the witnesses, Inspectors Chipley and Cook and Drug Enforcement Administration Official Michael Tiffin, did not understand Spanish and thus merely repeated what a translator told them. This argument is flawed for two reasons. First, the "translator", agent Blotsky, testified about the appellant's inculpatory statements. *Transcript* at 83. He was indisputably proficient in Spanish. *Transcript* at 85, 87–8. Second, officer Chipley understood some Spanish, having studied it for several years. *Transcript* at 21. In fact, Batencort referred to her as the "lady interpreter". *Transcript* at 192. Since their testimony was admissible and that of Tiffin and Cook was merely cumulative, the admission of Cook and Tiffin's testimony was harmless. *See, e. g., United States v. Long*, 5 Cir. 1978, 578 F.2d 579, 581 & n.5; *United States v. Edwards*, 5 Cir. 1978, 577 F.2d 883, 890 n.11; *United States v. Anderson*, 5 Cir. 1973, 485 F.2d 239, 240, *cert. denied*, 415 U.S. 958, 94 S.Ct. 1487, 39 L.Ed.2d 573 (1974).[1]

■ Next Batencort contends that the District Court committed reversible error in charging the jury, despite Batencort's timely objection, with respect to deliberate ignorance. Batencort takes the position that this instruction erroneously equated belief with the actual knowledge required for a conviction under 21 U.S.C. § 952(a)[2] and,

---

1. We note in passing that Batencort failed to object to Inspector Cook's hearsay testimony. We do not pause to address the effect of this failure, however, because of our conclusion

that the admission of both Cook and Tiffin's testimony was harmless, nonetheless.

2. *See United States v. Restrepo-Granda*, 5 Cir. 1978, 575 F.2d 524, 527.

further, impermissibly shifted the burden of proof.

Deliberate ignorance has been recognized as the equivalent of knowledge by this and other circuits and, on that basis, approval has been given to the "deliberate ignorance" charge. *See generally United States v. Restrepo-Granda*, 5 Cir. 1978, 575 F.2d 524 at 529 & nn.6–7, and cases cited therein. Indeed, the very instruction given in the case *sub judice* was upheld in the *Restrepo-Granda* decision. 575 F.2d at 528 n.2, 529.[3]

*United States v. Murrieta-Bejarano*, 9 Cir. 1977, 552 F.2d 1323, upon which Batencort relies, offers no solace to his position. The *Murrieta-Bejarano* court held that the "deliberate ignorance" instruction should not be given "in every case where a defendant claims a lack of knowledge, but only . . . where, in addition, there are facts that point in the direction of deliberate ignorance." *Id.* at 1325.

The record leaves no doubt that a "deliberate ignorance" instruction was warranted here. The large amount of money paid or promised to Batencort; the use of a false passport and an alias; Batencort's conduct while in the customs line; his acknowledgement, upon being informed that the cocaine had been discovered, that he knew "what he had gotten himself into", *Transcript* at 90; and, finally, his admission that "he had something in the suitcase that he shouldn't, but he didn't know exactly what," *Transcript* at 96,[4] support the "deliberate ignorance" charge given.

### III. Conclusion

Accordingly, we must affirm the Judgment of the court below.

AFFIRMED.

---

**3.** If you find from all the evidence beyond a reasonable doubt that the defendant believed that he had cocaine or a controlled substance and deliberately and consciously tried to avoid learning that there was cocaine or a controlled substance in the package he was carrying in order to be able to say, should he be apprehended, that he did not know, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

In other words, you may find that a defendant acted knowingly, if you find that either he actually knew he had cocaine or a controlled substance and that he deliberately closed his eyes to what he had every reason to believe was the fact. I should like to emphasize, ladies and gentlemen, that the requisite knowledge cannot be established by demonstrating merely that he was negligent or even foolish or stupid.

"When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist."

In the case *sub judice* Batencort had the benefit of the Model Penal Code § 2.02(7) balancing instruction. *See* 3d ¶. The "deliberate ignorance" charge given in the *Restrepo-Granda* case did not include this balancing instruction. We also note that the second paragraph of both the charge given here and in *Restrepo-Granda* is somewhat confusing to the extent that it refers to actual knowledge or deliberate ignorance in the conjunctive, "either" actual knowledge "and" deliberate ignorance, rather than in the disjunctive. Batencort did not object to this technical defect. In any event the instruction as given was, if anything, of greater benefit to Batencort than the instruction would have been without this defect.

**4.** In *United States v. Meneses-Davila*, 5 Cir. 1978, 580 F.2d 888, 896, we observed that a similar admission "might be sufficiently probative to convict."