[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14122

_____

D. C. Docket No. 04-00473-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HRISTOMIR BOYANOV HRISTOV,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 4, 2006)**

Before MARCUS, WILSON and COX, Circuit Judges.

MARCUS, Circuit Judge:

Hristomir Boyanov Hristov pled guilty to conspiring to possess with intent

to distribute cocaine and ecstasy, and the district court sentenced him to a term of

51 months in prison to be followed by three years of supervised release. On appeal, Hristov challenges the district court's decision to include, as relevant conduct, six kilograms of cocaine that Hristov transported from Las Vegas, Nevada to St. Petersburg, Florida. After thorough review, we affirm.

**I.**

The facts of this case are these. Hristov was charged in a one-count indictment with conspiring to possess with intent to distribute a quantity of cocaine and a quantity of 3,4-methylenedioxymethamphetamine (more commonly known as MDMA or ecstasy) from an unknown date through September 9, 2003, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). At his plea hearing, Hristov admitted to three drug transactions. He conceded that he received 8 to 9 ounces of cocaine from co-conspirator Joseph Bonetti in the summer of 2003 and 1500 to 2000 MDMA tablets from co-conspirator Plamen Kozarov. Although there was no date established for the MDMA transaction, Hristov admitted that it occurred during the time frame set forth in the indictment.[1] Hristov does not challenge anything related to either of those transactions on appeal.

Additionally, Hristov admitted that he transported a briefcase from Las

---

[1] In his appellate brief, Hristov states that he received the 8 to 9 ounces of cocaine and the 1500 to 2000 MDMA tablets in July of 2003. The exact date is unimportant, and we will assume July 2003 is accurate.

Vegas to St. Petersburg in January of 2002 that was alleged to have contained approximately six kilograms of cocaine. He was paid approximately $5000 (in the form of either cash or debt forgiveness) to transport the briefcase, and he had the following exchange with the district court regarding its contents:

The Court: All right. Did you know what was in the briefcase?

Mr. Hristov: No, I didn't.

The Court: Did you have a strong indication of what may been in there?

Mr. Hristov: There were many different items.

The Court: I'm sorry?

Mr. Hristov: There were many different items.

The Court: Like? Such as?

Mr. Hristov: Jewelry, money.

The Court: Okay.

Mr. Hristov: Important high-tech trips, weapons.

During a consensual interview with law enforcement agents, Hristov admitted that Kozarov paid him $5000 or forgave a debt in that amount in exchange for Hristov transporting a briefcase in his car from Las Vegas to St. Petersburg. Hristov met a man named Jacob Levy (whom he did not know) in Las Vegas, and Levy placed the briefcase in Hristov's vehicle. Once in St. Petersburg,

Hristov gave the briefcase to Bonetti. Hristov told the agent he never opened the briefcase and did not know what was inside. He did say, however, that he was very nervous while transporting the case and that it seemed reasonable to assume the contents were suspicious. Even before the agents told him that the briefcase contained cocaine, Hristov stated that it could have contained either cocaine or MDMA.

A probation officer prepared a presentence report ("PSR") in which he recommended holding Hristov responsible for the six kilograms of cocaine transported in 2002, along with the eight to nine ounces of cocaine he obtained in the summer of 2003 and the 1500 to 2000 units of MDMA he obtained and distributed in the course of the conspiracy.[2] Based on those drug quantities, the probation officer determined that Hristov had a base offense level of 30. The PSR recommended a two-level reduction because Hristov satisfied the safety-valve requirements of U.S.S.G. § 5C1.2, a two-level minor role reduction pursuant to U.S.S.G. § 3B1.2(b), and a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. That calculation left Hristov with an adjusted offense level of 24 and a criminal history category of I, which yielded a Guidelines range of 51 to 63 months imprisonment.

_____

[2]Hristov does not challenge the propriety of including the eight ounces of cocaine or the units of MDMA.

At the sentencing proceeding, Hristov objected to the inclusion of the six kilograms of cocaine, arguing that he did not know the briefcase contained cocaine. He did not, however, object to any of the other facts recited by the government or contained in the PSR. The district court overruled the knowledge objection and adopted the findings of the PSR, finding that Hristov remained willfully blind to the fact that the briefcase contained cocaine. The court included the transport of the briefcase as relevant conduct, noting that Hristov was vacationing in Las Vegas, that he was offered $5000 to transport a briefcase in his car, that he made inculpatory statements to law enforcement officers at the consensual interview, and that the transaction made Hristov nervous. Indeed, the district judge stated that "[Hristov] knew it wasn't a legitimate transaction, and he basically was like one of the three monkeys. He was just closing his eyes. Hear no evil, speak no evil, see no evil." The district judge acknowledged the advisory nature of the Guidelines and imposed a sentence at the bottom of the recommended range. Hristov maintains on appeal that the district court erred in attributing to him the six kilograms of cocaine as relevant conduct pursuant to U.S.S.G. § 1B1.3.

## II.

We review the district court's application of the Sentencing Guidelines de novo and its findings of fact for clear error. United States v. Grant, 397 F.3d 1330,

1332 (11th Cir. 2005). The only issue for us to decide on appeal is whether the district court correctly determined that Hristov knew or was deliberately ignorant of the fact that the briefcase contained cocaine, a finding of fact that will be reversed only if clearly erroneous.

We have long recognized that "the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance." United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000); accord United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993) (noting that deliberate ignorance is "the equivalent of knowledge" (internal quotation marks omitted)). In United States v. Rivera, 944 F.2d 1563 (11th Cir. 1991), we explained that "deliberate ignorance . . . is based on the alternative to the actual knowledge requirement at common law that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." Id. at 1570 (internal quotation marks omitted). "To act 'knowingly,' therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question." Id. (internal quotation marks omitted).[3] We

_____

[3]The Eleventh Circuit Pattern Jury Instructions explain deliberate ignorance in these terms:

When knowledge of the existence of a particular fact is an essential part of

6

have applied the deliberate ignorance theory in cases where the defendant proceeded to trial, see, e.g., United States v. Puche, 350 F.3d 1137, 1148-49 (11th Cir. 2003), and for the purpose of determining relevant conduct at sentencing in cases where the defendant pled guilty, see United States v. Alvarez-Coria, 447 F.3d 1340, 1344 (11th Cir. 2006).

Not surprisingly, this is not the first time a criminal defendant has obtained a package under suspicious circumstances, been paid an exorbitant sum to transport it, and then claimed surprise when the luggage was revealed to be a conduit for moving illegal drugs. Thus, for example, in United States v. Batencort, 592 F.2d

---

an offense, such knowledge may be established if the Defendant is aware of a high probability of its existence, unless the Defendant actually believes that it does not exist.

So, with respect to the issue of the Defendant's knowledge in this case, if you find from all the evidence beyond a reasonable doubt that the Defendant believed that [he] [she] possessed _____, a controlled substance, and deliberately and consciously tried to avoid learning that there was _____ in the package so possessed in order to be able to say, if apprehended, that [he] [she] did not know the contents of the package, you may treat such deliberate avoidance of positive knowledge as the equivalent of knowledge.

In other words, you may find that a Defendant acted "knowingly" if you find beyond a reasonable doubt either: (1) that the Defendant actually knew that [he] [she] possessed _____; or (2) that [he] [she] deliberately closed [his] [her] eyes to what [he] [she] had every reason to believe was the fact.

I must emphasize, however, that the requisite proof of knowledge on the part of the Defendant cannot be established by merely demonstrating that the Defendant was negligent, careless or foolish.

Eleventh Circuit Pattern Jury Instructions (Criminal), Special Instruction No. 8 (2003).

7

916 (5th Cir. 1979), a Colombian street vendor testified that he had been hired by an individual to transport merchandise between Colombia and the United States, was provided with false travel documents, and was promised $2000 upon delivery of a suitcase that was later found to contain drugs. Id. at 917.[4] When the defendant was questioned, he admitted that "he knew what he had gotten himself into" and that "he had something in the suitcase that he shouldn't but he didn't know exactly what." Id. The former Fifth Circuit held that a deliberate ignorance jury instruction was appropriate because of the large amount of money paid for delivery, the use of a false passport, the defendant's nervous actions in the customs line, and his statements indicating he knew he had done something wrong (even if he didn't know exactly what). Id. at 918; see also United States v. Peddle, 821 F.2d 1521, 1525 (11th Cir. 1987) (upholding a conscious avoidance instruction where the defendant told the police "he suspected something was going on with the vessel and that it may be carrying contraband of some kind . . . [and] that while he didn't know for sure what was onboard [sic] but suspected something was he really didn't even want to know what was onboard [sic]" (alterations in original)); United States v. Aleman, 728 F.2d 492, 494 (11th Cir. 1984) (finding sufficient evidence

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

for a "conscious avoidance" instruction where an unknown man provided defendant with a suitcase in Colombia, defendant did not know who was to pick up the suitcase (other than that it was a man named Luis in New York), and no delivery arrangements were discussed).

Here, Hristov argues there was insufficient evidence for the district court to find he remained deliberately ignorant of the fact that there were drugs in the briefcase. We disagree. Hristov admits all of the salient facts except knowledge; he was paid $5000 to transport a briefcase, in his own car, from Las Vegas to St. Petersburg. He received the briefcase from someone he had never previously met and delivered it to someone from whom he would later purchase cocaine. He acknowledged that transporting the briefcase made him nervous, and that it was reasonable to assume the contents were suspicious. In fact, he went so far as to state that cocaine or MDMA could have been in the briefcase -- even before the agents revealed to him that it indeed contained cocaine.[5] These undisputed facts, while insufficient to establish that Hristov actually knew what was in the bag, were more than sufficient to permit the trial court to find, by a preponderance of the

_____

[5]To the extent that Hristov argues the government had a burden to introduce evidence other than what was in the PSR and what was said at the sentencing hearing, we disagree. The district court's factual findings for the purposes of sentencing may be based on undisputed statements contained in the PSR or evidence obtained from the sentencing hearing. See United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004).

evidence at sentencing,[6] that he acted with an awareness of a high probability that the briefcase contained illegal drugs.  Thus, the district court did not clearly err in finding that Hristov knew that there were drugs in the briefcase.

To the extent Hristov argues that the Las Vegas incident is not relevant conduct because it falls outside the time frame of the conspiracy, we remain unpersuaded.  The indictment alleged that the conspiracy ran from "an unknown date through September 9, 2003."  Hristov does not challenge the sufficiency of the open-ended start date alleged in the indictment, and we have upheld the use of similar language in the past.  See United States v. Pease, 240 F.3d 938, 942-43 (11th Cir. 2001) (upholding an indictment that did not allege a specific start date for a drug conspiracy and rejecting defendant's argument that such an indictment fails to charge an offense because it sufficiently informed the defendant of the charge to which he pled guilty and would allow him to raise a double jeopardy defense in future prosecutions).  Moreover, the defendant never objected at the sentencing hearing to paragraph six of the PSR, which reads as follows: "The defendant participated in a drug conspiracy that began from at least mid 1996 and

_____

[6]At sentencing, the district court may find as relevant conduct those acts which have been established by a preponderance of the evidence.  United States v. Saavedra, 148 F.3d 1311, 1314 (11th Cir. 1998).  The more demanding "proof beyond a reasonable doubt" standard that would have governed the elements of a criminal offense at trial does not apply to relevant conduct at sentencing.  Id.

continued until September, 2003." The Guidelines establish the "relevant conduct" that may be considered at sentencing, including all acts "that occurred during the commission of the offense." U.S.S.G. § 1B1.3(a)(1).

In short, we conclude that the district court did not clearly err in finding by a preponderance of the evidence the requisite knowledge on the defendant's part and, therefore, in including the six kilograms of cocaine as part of the defendant's relevant conduct.

**AFFIRMED**.