[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13249
Non-Argument Calendar

_____

D. C. Docket No. 06-00198-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FERNANDO VILLANUEVA-NARANJO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 7, 2008)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Fernando Villanueva-Naranjo appeals his 188-month sentences imposed

pursuant to a guilty plea for (1) conspiracy to possess at least five kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846, and (2) possession of at least five kilograms of cocaine with the intent to distribute, in violation of § 841(b)(1)(A)(ii), § 846, and 18 U.S.C. § 2. On appeal, he argues that the district court erred in considering uncharged evidence of misconduct at sentencing. We AFFIRM.

## I. BACKGROUND

Villanueva-Naranjo was charged with conspiracy to possess at least five kilograms of cocaine with the intent to distribute and possession of at least five kilograms of cocaine with the intent to distribute. At his plea hearing, the government alleged that the charges stemmed from a Drug Enforcement Administration (DEA) investigation of a residence in Norcross, Georgia, that was allegedly used as a "stash house" by co-defendant Alberto Naranjo-Delatorre. R3 at 18. In February 2006, DEA observed Villanueva-Naranjo arrive in an Infiniti and enter the Norcross residence. Approximately one minute later, DEA observed Naranjo-Delatorre exit the house and drive away in the Infiniti. DEA observed Villanueva-Naranjo follow Naranjo-Delatorre in a Ford. Shortly thereafter, DeKalb County, Georgia, police officers conducted a traffic stop on Villanueva-Naranjo. After he fled the scene on foot, officers discovered approximately 18

2

kilograms of cocaine hydrochloride in hidden compartments of the Ford. In April 2006, DEA arrested Villanueva-Naranjo and seized over $23,000 in drug proceeds. Villanueva-Naranjo admitted to the government's version of the facts and pled guilty to the charges. The district court accepted the plea.

The probation officer submitted an expanded version of the facts in the pre-sentence investigation report (PSI), as follows. Villanueva-Naranjo leased the residence in Norcross and another residence at Carson Valley Drive in Lilburn, Georgia. Naranjo-Delatorre, along with his co-conspirators, conducted transactions involving large amounts of controlled substances. Following the traffic stop and seizure, DEA continued observing Naranjo-Delatorre who relocated the stash house from Norcross to a residence at Glacier Run in Lilburn, Georgia. DEA observed vehicles seen at the Norcross stash house, equipped with hidden compartments, at both residences in Lilburn. On 12 April, DEA conducted a search of the Carson Valley Drive residence, retrieving approximately 4,800 grams of methamphetamine, 56 grams of cocaine hydrochloride, and 3 handguns with ammunition. DEA also later interviewed Anthony Hall, who stated that Villanueva-Naranjo had previously sold him at least 24 kilograms of cocaine hydrochloride in 2004 and 2005.

The probation officer grouped the two counts together pursuant to the

Sentencing Guidelines.  See U.S.S.G. § 3D1.2(d) (2006) (grouping counts together when "the offense level is determined largely on the basis of the total amount of . . . the quantity of a substance involved").  This resulted in a base offense level of 36 including the drugs recovered from the abandoned Ford, the Carson Valley Drive residence, and the Hall transactions.  There was a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for the firearms found at the Carson Valley Drive residence but no two-level "safety valve" reduction under U.S.S.G. § 2D1.1(b)(9) also because of the firearms.  There was, however, a two-level reduction for acceptance of responsibility.  The probation officer thereby arrived at a total offense level of 36 and a criminal history category of I, which yielded a Guidelines range of 188 to 235 months.  Villanueva-Naranjo was subject to a statutory minimum of ten years and a maximum of life imprisonment.

Villanueva-Naranjo objected to the PSI, arguing that (1) he should only be responsible for the cocaine recovered from the traffic stop because the government had failed to disclose information related to the search of the Carson Valley Drive residence and the Hall transactions prior to his guilty plea; (2) based on the quantity of cocaine found in his car as a result of the traffic stop, the offense level should have been 34; (3) a specific offense characteristic pursuant to U.S.S.G. § 2D1.1(b)(1) was inappropriate because he was not connected with the Carson

4

Valley Drive residence and the weapons were not connected to his offense; and (4) because he had acted only as a courier for Naranjo-Delatorre, a mitigating role reduction pursuant to U.S.S.G. § 2D1.1(b)(9) was appropriate. At sentencing, Villanueva-Naranjo renewed his objections to the calculations made by the probation office. The district court rejected his argument that the government had a duty to disclose evidence of uncharged misconduct at the plea hearing, relying on United States v. Behr, 93 F.3d 764 (11th Cir. 1996) (per curiam).

The district court then held an evidentiary hearing as to Villanueva-Naranjo's remaining objections regarding relevant conduct. The government presented several witnesses, including Charles Stroup, the owner of the Carson Valley Drive residence. Stroup testified that a person named Carlos "Caudara" (or Cardona) had leased the property from him since July 2004. R4 at 20. He later identified Villanueva-Naranjo as that renter. Task Force Agent Frank McCann testified that, during the raid of the Carson Valley Drive residence, DEA arrested Eliseo Govino Valdovinos. He also confirmed that DEA discovered 6 pounds of methamphetamine, 413 grams of marijuana, approximately 30 grams of cocaine, and 3 guns in the house. On cross examination, Agent McCann testified that Valdovinos had been staying at the Carson Valley Drive residence as a caretaker for about four months. Special Agent Ralph Iorio testified that DEA seized two

5

cellular phones from Valdovinos at the time of his arrest. Iorio stated that each phone contained a directory entry for "Jefe" linked to the telephone number 678-469-1553. R4 at 39. Further, he identified a note found in Valdovinos's wallet. The note contained the name "Pilas" and the telephone number 404-389-5259. Id. at 40. Special Agent David Wolff testified that "jefe" is the Spanish word for "boss." Id. at 41-42. Special Agent James Barnes testified that Villanueva-Naranjo was known as "Pilas." Id. at 45. He also noted that, during Villanueva-Naranjo's arrest, agents had recovered two pre-paid cell phones which were assigned the numbers 678-469-1553 and 404-389-5259, matching the numbers found in the two phones and on the slip of paper recovered from Valdovinos. Id. at 44-45. Anthony Hall, a known drug dealer, testified that Villanueva-Naranjo supplied him with approximately 50 kilograms of cocaine from 2003 to 2005. Id. at 61. He described how Villanueva-Naranjo would deliver the cocaine in vehicles equipped with "stash spots," or hidden compartments used to hide the drugs. Id. at 62. He also identified Valdovinos as someone who had accompanied Villanueva-Naranjo on at least three occasions.

The district court found that the government had established by a preponderance of the evidence that Villanueva-Naranjo sold or delivered at least 24 kilograms of cocaine to Hall and that he had leased the Carson Valley Drive

6

residence. Further, the court determined that a mitigating role reduction was inappropriate because Villanueva-Naranjo acted not only as a courier but also as a co-conspirator by storing large quantities of controlled substances at his leased residences and delivering cocaine to Hall. The district court sentenced Villanueva-Naranjo to a term of 188 months of imprisonment for both counts, to run concurrently, and 5 years of supervised release. Villanueva-Naranjo objected to the sentence, challenging the district court's findings of fact.

On appeal, Villanueva-Naranjo argues that, pursuant to Federal Rule of Criminal Procedure 16 and "basic tenets of fair play," the government has an ongoing duty to disclose all information related to a defendant's criminal activities at a plea hearing. Appellant's Br. at 15. He asserts that the government knew of the uncharged misconduct at the plea hearing, yet deliberately refused to disclose the information, violating his substantial rights because he was not aware of the direct consequences of his guilty plea. Villanueva-Naranjo also argues that the drugs and guns connected with the Carson Valley Drive house should not be considered relevant conduct for the purpose of calculating his sentence in this case.

## II. DISCUSSION

We review a sentencing court's factual findings for clear error and its application of law to those facts de novo. United States v. Garcia-Jaimes, 484

7

F.3d 1311, 1320 (11th Cir. 2007), petition for cert. filed (U.S. June 11, 2007) (No. 06-11863). Under the advisory Sentencing Guidelines, district courts may consider "not merely the charged conduct, but rather all 'relevant conduct,' in calculating a defendant's offense level." United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006) (citation omitted). Relevant conduct includes "both uncharged and acquitted conduct" and even conduct that takes place outside of a relevant statute of limitations period. Id. (citing Behr, 93 F.3d at 765-66). A district court's determination of relevant conduct is governed by the preponderance of the evidence standard rather than the more demanding standard of proof beyond a reasonable doubt. United States v. Hristov, 466 F.3d 949, 954 n.6 (11th Cir. 2006).

In Behr, the defendant pled guilty to one count of wire fraud in the amount of $12,000. Behr, 93 F.3d at 764-65. As a result of the victim's internal investigation, it was discovered that Behr's conduct resulted in a total loss of over $300,000. Id. at 765. The probation officer recommended that the sentencing court consider the additional loss of $300,000 as relevant conduct, which the district court accepted. Id. On appeal, we rejected Behr's argument that a district court may not consider criminal conduct that occurred outside of the statute of limitations period as relevant conduct for sentencing purposes. Id. at 765-66. We

8

also rejected his contention that "the government has a duty to advise a defendant before he pleads guilty which relevant conduct the Court will use to enhance his sentence" because "the relevant conduct that eventually gets considered in the PSI is unknown to both the government and the defendant when a plea is entered, because the probation officer has not prepared the PSI at that time." Id. at 766. We concluded that "[t]he government does not have a duty to disclose information it does not possess." Id.

Villanueva-Naranjo's central argument, that the government has a general, ongoing duty to disclose all information related to a defendant's criminal activities, is unpersuasive.[1] In support thereof, he cites only Federal Rule of Criminal Procedure 16 and the "basic tenets of fair play promoted in the federal courts." Appellant's Br. at 15. The Federal Rules of Criminal Procedure, however, do not provide an unlimited right to discovery of all evidence related to a defendant's case. See, e.g., Fed. R. Crim. P. 16(a)(1)(E) (permitting discovery of documents in the "government's possession, custody, or control" when "the item is material to

---

[1] In as much as Villanueva-Naranjo suggests that the government's non-disclosure of uncharged conduct violated Federal Rules of Criminal Procedure 11 or 16, he did not raise either argument before the district court. Although he made passing references to violations of both rules in his brief, the references appear as background to his central argument that the government has a general duty "to disclose all information it has in its possession related to the defendant's criminal activities." See Appellant's Br. at 15-16. Therefore, both issues are deemed abandoned. See United States v. Jernigan, 341 F.3d 1273 n.8, 1284 (11th Cir. 2003) (holding issue abandoned where, although defendant made passing references to issue in brief, references were undertaken as background to claims that he expressly advanced).

9

preparing the defense" or "the government intends to use the item in its case-in-chief at trial"). Further, <u>Behr</u> flatly rejected any "duty to advise a defendant before he pleads guilty which relevant conduct the Court will use to enhance his sentence" because that information is unknown to the government at the time of the plea hearing. <u>Behr</u>, 93 F.3d at 766.

Villanueva-Naranjo attempts to distinguish <u>Behr</u> on the basis that the government knew of his "expanded role" at the time he pled guilty. <u>See</u> Appellant's Br. at 16; Reply Br. at 2. However, <u>Behr</u> did not turn on the government's actual knowledge of the facts that might be used to enhance a defendant's sentence. <u>See Behr</u>, 93 F.3d at 766. Rather, we rejected Behr's argument because, at the time of the plea hearing, the government could not identify which relevant conduct the probation officer would use in the PSI. <u>See id.</u> Similarly, the government could not predict that the probation officer in this case would include additional evidence concerning Villanueva-Naranjo's other offense conduct.

Villanueva-Naranjo also seeks to distinguish <u>Behr</u> on the basis that Behr "had an inkling that the additional loss amount could be used as relevant conduct before he decided to plead guilty." <u>See</u> Reply Br. at 5. However, as Villanueva-Naranjo admits, <u>Behr</u> "does not make issue of whether or when the evidence

10

became known to the parties." Id. at 5 n.2. Thus, it is uncertain whether Behr knew of the additional loss amount and equally unclear how Behr was in a different position than Villanueva-Naranjo at the time of his plea. See Behr, 93 F.3d at 765. Because, as in Behr, the government could not identify whether his "expanded role" would be considered by the probation officer as relevant conduct for the purposes of preparing the PSI, it had no duty to disclose evidence of uncharged misconduct at Villanueva-Naranjo's plea hearing. See id. at 766. Accordingly, the district court did not err in admitting this evidence.

Villanueva-Naranjo also argues that the district court erred in applying two enhancements and denying a role reduction based on uncharged misconduct. Under the Guidelines, a district court may hold a defendant accountable "not just for the 'offense of conviction,' but for all 'offense conduct,' which 'refers to the totality of the criminal transaction in which the defendant participated and which gave rise to his indictment, without regard to the particular crimes charged in the indictment.'" United States v. Fuentes, 107 F.3d 1515, 1522 (11th Cir. 1997). "Under U.S.S.G. § 1B1.3, the district court must consider 'relevant conduct' when calculating a defendant's base offense level, including 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.'" United States v. Alvarez-Coria, 447 F.3d 1340, 1344

11

(11th Cir. 2006) (per curiam). This also includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(B).

When sentencing a defendant for an offense covered by U.S.S.G. § 3D1.2(d), relevant conduct includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006) (per curiam) (citing U.S.S.G. § 1B1.3(a)(2)). In determining whether uncharged conduct is relevant conduct, we evaluate the "'similarity, regularity, and temporal proximity' between the offense of conviction and the uncharged conduct." United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994) (citation omitted); see also United States v. Simpson, 228 F.3d 1294, 1301 (11th Cir. 2000). We must consider "whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." Maxwell, 34 F.3d at 1011.

Villanueva-Naranjo pled guilty to two counts involving a cocaine

distribution scheme with Naranjo-Delatorre, and unknown others, from February 2006 to April 2006. Villanueva-Naranjo's admissions at the plea hearing connect the distribution scheme to the stash house in Norcross, involving the use of vehicles with hidden compartments to conceal cocaine. The undisputed portion of the PSI showed that Villanueva-Naranjo leased the residence in Norcross. Naranjo-Delatorre moved the stash house from Norcross to the Glacier Run residence after Villanueva-Naranjo's arrest. DEA observed similar vehicles equipped with hidden compartments for narcotics at this residence as well as the Carson Valley Drive residence. The testimony at the sentencing hearing showed that Villanueva-Naranjo maintained a lease on the Carson Valley Drive residence and conducted prior cocaine dealings in the company of its caretaker, Valdovinos, dating back to 2003, again using vehicles equipped with hidden compartments. The cellular phones recovered from Valdovinos and Villanueva-Naranjo prove that they maintained contact until Valdovinos's arrest at the Carson Valley Drive residence. Witness testimony established that police recovered 6 pounds of methamphetamine, 413 grams of marijuana, approximately 30 grams of cocaine, and 3 guns from the Carson Valley Drive residence in April 2006. Further, Hall's testimony showed that, between 2003 and 2005, Villanueva-Naranjo distributed at least 50 kilograms of cocaine, utilizing vehicles equipped with hidden

compartments.

Based on this evidence, the district court did not commit error in finding that the drugs and weapons seized from the Carson Valley Drive residence were relevant conduct for the purposes of Villanueva-Naranjo's sentencing. The raid at Carson Valley Drive occurred within the time frame of the indicted conspiracy, so there is temporal proximity between the uncharged conduct and the offense of conviction. See id. Further, the evidence indicates sufficient regularity and similarity between the uncharged conduct and the indicted offense. See id.; Simpson, 228 F.3d at 1301. Villanueva-Naranjo leased both the stash house in Norcross and the Carson Valley Drive residence during the time of the indicted conspiracy. Further, he had prior dealings and maintained current contact with the caretaker of the Carson Valley Drive residence. Both the Norcross and Carson Valley Drive operations employed similar methods of delivering drugs, using vehicles equipt with hidden compartments, a delivery method Villanueva-Naranjo was known to have used in the past. Additionally, Villanueva-Naranjo had a history of acting as more than a courier as evidenced by his prior dealings with Hall from 2003 to 2005. Because "there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct," the district court did not error in concluding that it was

14

relevant conduct for the purposes of sentencing.  See Maxwell, 34 F.3d at 1011.

## III. CONCLUSION

Villanueva-Naranjo appeals his 188-month sentences imposed  for conspiracy to possess and possession of at least five kilograms of cocaine with the intent to distribute.  Because the government could not identify whether Villanueva-Naranjo's "expanded role" would be considered by the probation officer as relevant conduct for the purposes of preparing the PSI, it had no duty to disclose evidence of any uncharged misconduct at Villanueva-Naranjo's plea hearing, and the district court did not err in admitting it.  Additionally, because sufficient distinctive similarities exist between the offense of conviction and the uncharged misconduct to signal that they are part of a single course of conduct, the district court did not err in concluding that the uncharged conduct was relevant for the purposes of sentencing.  Accordingly, we **AFFIRM**.