[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10021
Non-Argument Calendar
_____

D. C. Docket No. 07-20271-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODOLFO AENLLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 4, 2009)

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Rodolfo Aenlle appeals his 84-month sentence imposed after a jury found

him guilty of (1) conspiring to defraud the United States, in violation of 18 U.S.C. § 371; (2) conspiring to commit health care fraud, in violation of 18 U.S.C. § 1349; and (3) soliciting and receiving health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1). Specifically, Aenlle challenges the loss amount that the district court attributed to him.

According to the indictment, Aenlle conspired with the owners of Unimed Equipment & Supplies ("Unimed") to submit false claims to Medicare for medically unnecessary medications. In doing so, Aenlle obtained prescriptions for Medicare beneficiaries, Unimed submitted claims to Medicare on behalf of those beneficiaries, and Aenlle received kickbacks from the Medicare payments that Unimed received. The district court sentenced Aenlle to 84 months' imprisonment. In calculating his offense level, the district court increased his base offense level by 16 based on the loss amount. *See* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(1)(I).[1] While Aenlle's conviction stemmed from his submission of false prescriptions to Unimed through his own company, Direct Nursing Associates, Inc. ("Direct Nursing"), in exchange for kickbacks, the district

---

[1] If the greater of the value of a bribe or improper benefit to be conferred exceeds $5,000, Guidelines § 2B4.1 requires the district court to increase the offense level as indicated by the table in Guidelines § 2B1.1. U.S. SENTENCING GUIDELINES MANUAL § 2B4.1(b)(1). Section 2B1.1, in turn, provides for an increase of 16 levels when the loss amount is more than $1,000,000.

court found that Direct Nursing was involved in similar activity with Prestige Pharmacy ("Prestige") and that Direct Nursing directly submitted to Medicare false claims for durable medical equipment. As such, the total loss amount associated with Aenlle's scheme amounted to $1,048,487, including: (1) $164,243, based on prescriptions Aenlle and his co-conspirator Carlos Carrion delivered to Unimed through Direct Nursing;[2] (2) $58,010, based on prescriptions Aenlle and Carrion delivered to Prestige through Direct Nursing; and (3) $826,234, based on claims submitted by Direct Nursing directly to Medicare for medically unnecessary equipment.[3] Aenlle challenges only the attribution of the latter two amounts to him, specifically the loss amounts relating to (1) Prestige and (2) Direct Nursing claims for durable medical equipment from June 2003 to June 2006.

On appeal, Aenlle argues that the district court erred in imposing his sentence because its determination of the appropriate Guidelines offense level involved speculation and went far beyond the facts that had been proven. He maintains that the attribution to him of loss related to Prestige was based on speculation, as no witness testified that Aenlle or Carrion gave any false prescription to Prestige in return for a payment. According to Aenlle, the only

---

[2] The parties agree that the intended loss amount as to Unimed of $164,243 should have been $164,423. They also agree that this error is not relevant to Aenlle's appeal.

[3] Each of the three individual loss amounts reflect 80% of the actual amount billed to Medicare in order to account for Medicare's 20% co-pay requirement.

"evidence" of his involvement with Prestige showed that some of the documents seized from Prestige had the names Carlos and Rodolfo on them. Aenlle argues that, even if there was sufficient evidence to support a finding that he was giving false prescriptions to Prestige, there was no evidence that Prestige's records were accurate or that certain references to "Prestige Group 9" in those records referred to him. Aenlle next contends that the attribution of loss relating to claims submitted to Medicare by Direct Nursing for medical equipment also was based on speculation as there was no evidence that every claim submitted by Direct Nursing for equipment during Aenlle's tenure with the company was false. In fact, Carrion testified that he only saw that about 20 of Direct Nursing's patients had equipment that they did not seem to be using. As noted above, Aenlle contends that the only loss that should have been attributed to him in determining the appropriate increase in his offense level was the $164,243 (80% of $205,529) in loss from claims submitted to Medicare by Unimed and another Pharmacy.

We review a district court's interpretation of the Guidelines *de novo* and its factual findings for clear error. *United States v. Masferrer*, 514 F.3d 1158, 1164 (11th Cir. 2008) (citation omitted), *cert. denied*, 129 S. Ct. 996 (2009). In particular, "[t]his court reviews for clear error a district court's determination of loss from fraud for sentencing purposes." *United States v. Liss*, 265 F.3d 1220,

4

1230 (11th Cir. 2001). "We cannot find clear error unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation marks and citation omitted).

Proper calculation of the Guidelines, and in particular a defendant's offense level, requires consideration of "all relevant conduct," not merely charged conduct. *United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006). The government must prove relevant conduct, such as the calculation of loss amount in a fraud case, with "reliable and specific evidence." *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). A district court's determination of relevant conduct is governed by the preponderance of the evidence standard rather than the more demanding standard of proof beyond a reasonable doubt. *United States v. Hristov*, 466 F.3d 949, 954 n.6 (11th Cir. 2006). Offense conduct is determined based on relevant conduct, as provided in Guidelines § 1B1.3. Where, as here, Guidelines § 2B4.1 applies, relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(2) (cross-referencing U.S. SENTENCING GUIDELINES MANUAL § 3D1.2(d)). According to the commentary, offenses constitute a common scheme or plan for purposes of

5

relevant conduct if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. n.9(A) (emphasis added). "The court need only make a reasonable estimate of the loss" based on the available information. U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.3(C).

As an initial matter, the Government asserts that all of Aenlle's arguments on appeal should be reviewed for plain error, apparently based on the fact that Aenlle did not raise any objections after his sentence was imposed. However, "so as long as a party states its objection to the sentence at some point during the sentencing hearing, its failure to repeat the objection at the conclusion of the imposition of sentence will not result in a waiver of that objection." *United States v. Hoffer*, 129 F.3d 1196, 1202 (11th Cir. 1997) (discussing *United States v. Weir*, 51 F.3d 1031, 1033 (11th Cir. 1995)). Aenlle adequately raised his objections that there was insufficient evidence to hold him accountable for the losses relating to Direct Nursing billing from June 2003 to June 2006 and the Prestige Pharmacy kickbacks, even though he did not reiterate them after sentencing. *See id.* at 1203 (holding "that the government did not waive its objections to the district court's departure decision and the resulting sentence by failing to reiterate these objections

6

after the sentence was imposed"). Therefore, the more stringent plain error standard of review does not apply.

The Government also argues that Aenlle invited error for failing to object to losses relating to Direct Nursing durable medical equipment claims that took place between 2001 and 2003. Aenlle did not invite error because, at most, he failed to object to that portion of the loss amount. *Cf. United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam) (noting that the "doctrine of invited error is implicated when a party induces or invites the district court into making an error") (citation omitted). Aenlle objected that the Presentence Investigation Report improperly included the billing of medical equipment by Direct Nursing between June 2003 and June 2006 in its loss amount even though no trial evidence showed that medical equipment billed during that time was medically unnecessary. Because Aenlle did not object to the inclusion of fraudulent Direct Nursing durable medical equipment claims from 2001 to 2003, he admitted the loss amounts for that time period. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (holding that factual findings set forth in the PSI not objected to by a defendant are deemed admitted). In any event, Aenlle does not argue on appeal that the DME claims from 2001 to 2003 were not fraudulent.

Applying the clear error standard of review, we conclude that the district

7

court did not clearly err by attributing the loss amounts related to durable medical equipment claims from Direct Nursing and prescriptions claims from Prestige to Aenlle. In *United States v. Valladares*, we addressed a defendant's participation in a scheme to defraud Medicare, where the defendant paid Medicare beneficiaries to go to doctors, bribed doctors to obtain prescriptions for medically unnecessary aerosol medication, and gave the prescriptions to pharmacies that would use them to submit fraudulent Medicare claims. 544 F.3d 1257, 1261(11th Cir. 2008) (per curiam). Although not included in the indictment, the government presented evidence at trial that the defendant was independently submitting fraudulent Medicare claims on behalf of her own company, which provided aerosol-related medical equipment to Medicare beneficiaries. *Id.* We held that the district court did not clearly err in finding that evidence of the defendant's submission of Medicare claims on behalf of her own company was relevant conduct as part of a common plan or scheme because (1) the victim and purpose (i.e., to defraud Medicare) of the pharmacy and equipment schemes were the same; (2) the two schemes involved the same *modus operandi* of submitting fraudulent Medicare claims; (3) both schemes used many of the same patients to bill Medicare; and (4) the aerosol medication billed by the pharmacies was typically ingested through the aerosol durable medical equipment billed by the defendant's company, and

8

Medicare only would reimburse aerosol medication taken through such equipment. *Id.* at 1268. Likewise here, both the Direct Nursing evidence and the Prestige evidence constituted "relevant conduct" to the claims for which Aenlle was convicted insofar as (1) they involved the same victim (Medicare); (2) they shared the same purpose of defrauding Medicare; (3) they involved the same *modus operandi* of submitting fraudulent Medicare claims; and (4) they involved common patients. *See id.* at 1258. In addition, as to the durable medical equipment claims from Direct Nursing, Carrion testified that, when another person was in charge of the company, they paid all of the patients and that none of the patients were legitimate, which supports an inference that the prescription fraud kickback scheme continued when Aenlle and Carrion assumed control in 2001.

Because the district court did not clearly err in attributing loss amounts relating to durable medical equipment claims from Direct Nursing and prescriptions claims from Prestige to Aenlle, we affirm.

**AFFIRMED.**