[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11896
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20374-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE JESUS ARGIZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 13, 2020)

Before WILSON, MARTIN, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jose Argiz was convicted of five counts of money laundering in violation of 18 U.S.C. § 1956(a).  At trial, the District Court instructed the jury that it could find that Argiz possessed the requisite mental state for the offenses—namely, "knowledge"—if Argiz deliberately avoided learning of the illegal nature of the scheme in which he was involved.  On appeal, Argiz argues that the Court erred in issuing this deliberate ignorance instruction.  We reject that argument in Part I.  He also argues that the Court erred in refusing to instruct the jury on his theory of defense, and in denying him the opportunity to present evidence that he possessed diminished mental capacity at the time he committed the offense.  We reject those arguments in Part II and Part III, respectively.  Therefore, we affirm.

I.

We first consider whether the District Court erred in instructing the jury on deliberate ignorance.  We conclude that it did not.

The district court has "'broad discretion' in formulating jury instructions provided that 'the charge as a whole accurately reflects the law and the facts.'" *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993) (quoting *United States v. Turner*, 871 F.2d 1574, 1578 (11th Cir. 1989)).  We will not reverse a conviction because of the instructions given to a jury "unless 'the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process.'"  *United States v. Isnadin*, 742 F.3d

2

1278, 1296 (11th Cir. 2014) (quoting *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000)).  If the jury instruction accurately states the applicable law, "there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism."  *United States v. Gonzalez*, 834 F.3d 1206, 1222 (11th Cir. 2016) (quoting *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013)).

The knowledge element of a criminal statute "can be proved by demonstrating either actual knowledge or deliberate ignorance."  *Prather*, 205 F.3d at 1270.  In other words, "if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge."  *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006) (quoting *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991)).  Therefore, a deliberate ignorance jury instruction is appropriate if the facts "support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution."  *Rivera*, 944 F.2d at 1571 (quoting *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir. 1987)).  This standard applies whether the evidence is direct or circumstantial.  *Arias*, 984 F.2d at 1143.  We review *de novo* a defendant's claim

3

that the district court erred in instructing the jury on deliberate ignorance. *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993).

Here, the District Court did not err in instructing the jury on deliberate ignorance. Argiz agreed to let a stranger deposit money into his bank accounts without any explanation of why the stranger needed to do so. Then, Argiz would hand deliver the deposits to different unknown individuals at different locations pursuant to instructions from this stranger. For his services, Argiz was paid $500 per transaction.

Because of the sketchy and inexplicable circumstances surrounding this arrangement and the fee that was being paid, it is a permissible inference that Argiz was suspicious of the scheme but purposefully chose not to investigate it in order to avoid learning the illegal nature of the funds. People who need to distribute lawfully obtained money (1) do not enlist the help of random people, like Argiz, whom they do not know, (2) do not request to use this random person's bank account, and (3) do not pay this random person $500 every time he distributes the money deposited into his bank account to unknown individuals at various locations.[1] Therefore, the jury reasonably could have concluded that Argiz suspected that he was involved in unlawful activity, and that he chose not to

---

[1] While $500 per transaction is not an exorbitant amount of money, it would take 40 hours—a full work-week—for a law-abiding citizen, who is earning $12.50 per hour, to earn that much money. And, of course, the law-abiding citizen would have to pay taxes on that income.

investigate so that he could keep making his commission.  This inference is bolstered by the fact that Argiz initially lied to investigators regarding the circumstances under which he met and agreed to help this stranger—if Argiz did not suspect that he was engaged in illegal activity, it is less likely that he would have lied to investigators.  Accordingly, we affirm as to this issue.

## II.

We next consider whether the District Court erred in refusing to instruct the jury on Argiz's theory of defense.  We conclude that it did not.

A criminal defendant is entitled to a theory-of-defense instruction where there is any foundation for the instruction in the evidence, even if the evidence is "weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir. 1986) (quoting *United States v. Young*, 464 F.2d 160, 164 (5th Cir. 1972)).  However, the refusal to give a theory-of-defense instruction is not error if the defendant's general theory was covered by the instructions actually given by the district court.  *United States v. Barham*, 595 F.2d 231, 245 (5th Cir. 1979).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down before October 1, 1981. *Id.* at 1209.

Here, the District Court did not abuse its discretion by refusing to instruct the jury on Argiz's theory of defense because the instruction was substantially—if not entirely—covered by the Court's other instructions.

Argiz requested that the Court issue one of the three following theory-of-defense instructions. The numbers in brackets are inserted for ease of analysis.

First:

> It is the theory of the defense that [1] Jose Argiz did not know that any of the money deposited into his bank account was the proceeds of unlawful activity. The defense contends that [2] Jose Argiz was also victim of the bad actors, was not a part of their scheme and did not intentionally associate with or participate in the crime with them. [3] The defense contends that Jose Argiz was not aware of and did not participate in any of the phone calls made to the victims in this case. [4] The defense also contends that Jose Argiz was misled by the bad actors just as the victims were. [5] If the government did not prove beyond a reasonable doubt that Jose Argiz knew that the money deposited into his account was from fraud then you must find him not guilty.

Second:

> [Argiz] has raised as a defense that he did not have the knowledge required to be guilty of money laundering. Specifically, [6] he did not know that [] the money which was deposited into his Bank of America accounts . . . were the proceeds of some kind of unlawful activity, or [7] that the transactions were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the illegal activity.

> [8] It is the government's burden to prove beyond a reasonable doubt that Jose Jesus Argiz had the knowledge required to commit money laundering.

6

[9] If after considering all of the evidence you have a reasonable doubt about whether Jose Jesus Argiz had the knowledge required for money laundering, or if [Argiz] did not know that the money involved in the transactions represented proceeds from some form of activity that is a felony under state or Federal law you must find him not guilty of that offense.

Third:

[10] It is the theory of the defense that Jose Argiz did not know and had no reason to know that any of the money deposited into his bank account was the proceeds of unlawful activity. [11] The defense contends that Jose Argiz was a victim of the bad actors, was not a part of their scheme and did not intentionally associate with or participate in the crime with them. [12] The defense also contends that Jose Argiz was merely foolish and perhaps careless, but not a willful participant in any crime. [13] If you find that Jose Argiz was merely foolish and did not have knowledge that the money deposited into his account was the proceeds of the specified unlawful activity (wire fraud) then you must find him not guilty.

The "theories" contained in these proposed instructions can be categorized into three arguments. First, Points 1, 5, 6, 8, 9, 10, 12, and 13 all assert that Argiz did not know that the money he was handling was the proceeds of illegal activity. Second, Point 7 asserts that Argiz did not have a different aspect of the requisite knowledge to be convicted of the crime—it claims that he did not know that the transactions were designed to conceal illegal activity. Third, Points 2, 3, 4, and 11 all assert that Argiz was an unwitting victim of the scheme who did not intend to participate in any illegal activity.

The District Court did not err by declining to give Argiz's proposed theory-of-defense instructions because the Court's instructions adequately covered the

7

substance of the proposed instructions.  First, Points 1, 5, 6, 8, 9, 10, 12, and 13 are covered by the Court's instruction that the jury must find that "the defendant knew that the money or property involved in the transaction were the proceeds of some kind of unlawful activity."  Second, Point 7 is covered by the Court's instruction that the jury must find that "the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds."  Third, all of the Points (1-13) are covered by the Court's deliberate ignorance instruction:

> In other words, *you must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.* If a defendant's knowledge of a fact is an essential part of a crime it's enough that the defendant was aware of a high probability that the fact existed; unless the defendant actually believed the fact didn't exist.

> Deliberate avoidance of positive knowledge, which is the equivalent of knowledge, occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents.

> So, in this case, you may find that a defendant knew that the money or property involved in the financial transactions were the proceeds of some kind of unlawful activity if you determine beyond a reasonable doubt that the defendant, one, actually knew that the money or property involved in the financial transactions were the proceeds of some kind of unlawful activity.

> Or, two, had every reason to know but deliberately closed his eyes. *But I must emphasize that the requisite proof of knowledge on the part of the defendant cannot be established by merely demonstrating that the defendant was negligent, careless or foolish.*

8

Therefore, we affirm as to this issue.

III.

We finally consider whether the District Court erred in denying Argiz the opportunity to present evidence regarding his alleged diminished mental capacity. Because the District Court never actually denied Argiz such an opportunity, it did not err.

The record does not support Argiz's contention that the District Court denied him the opportunity to present evidence regarding diminished capacity. At trial, defense counsel made the following statement to the Court:

> In the instances where the Government is asking for a deliberate ignorance instruction I would argue that the defense should be permitted to argue diminished capacity to the jury.
>
> Because in deliberate ignorance the Government is asking -- saying a defendant should have known.
>
> So it is fundamentally unfair to put that standard on someone who does not have the ability or capacity to perceive information like a reasonable person would.
>
> So in this particular instance that is what I would argue in the event the deliberate ignorance instruction is given -- as your Honor has indicated she would -- I would like to preserve for the record that I believe a diminished capacity defense should be permitted.

In response, the Court said: "All right. That issue is preserved for the record." Then, when Argiz's opportunity to present evidence about diminished capacity came in his case-in-chief, Argiz rested his case without presenting such evidence.

9

We cannot see how the District Court's statement could be interpreted as precluding Argiz from offering evidence about diminished capacity. The Court simply did not rule that such evidence would be precluded. Therefore, Argiz's failure to present evidence regarding diminished capacity was his own error, rather than the District Court's error.[3]

IV.

Accordingly, we affirm.

**AFFIRMED.**

---

[3] Admittedly, during *sentencing*, the Court suggested that such evidence would have been inadmissible at trial. But Argiz cannot argue that the Court's statements, which it made *after* Argiz was convicted, affected his decision not to present evidence of diminished capacity or precluded him from offering such evidence *before* he was convicted because the Court had not yet made those statements.