**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hernando ARIAS, Illiana Arias, Defendants–Appellants.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eduardo MOTA, Defendant–Appellant.**

**Nos. 90–6060, 91–5298.**

United States Court of Appeals, Eleventh Circuit.

March 3, 1993.

Jill K. Traina, Sheryl J. Lowenthal, Coral Gables, FL, for defendants-appellants. in No. 90–6060.

Dexter W. Lehtinen, U.S. Atty., Charene E. Sreenan, Asst. U.S. Atty., Kathleen Salyer, Linda Collins Hertz, Miami, FL, for plaintiff-appellee in No. 90–6060.

Ronald C. Polk, Ft. Lauderdale, FL, for defendant-appellant in No. 91–5298.

Dexter W. Lehtinen, U.S. Atty., Daryl E. Trawick, Charene E. Sreenan, Asst. U.S. Attys., Kathleen Salyer, Linda Collins Hertz, Miami, FL, for plaintiff-appellee in No. 91–5298.

Before FAY, DUBINA, and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This is an appeal from convictions for conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute. We affirm the convictions of Illiana Arias and Hernando Arias, but reverse those of Eduardo Mota.[1]

## I. FACTS

On May 17, 1990, a customs inspector's dog alerted to a courier bag at the Miami International Airport. Upon inspection, a package shipped from Colombia to a "Senior [sic] Javier Ortiz" of Miami, Florida was found to contain a broken computer monitor with approximately two pounds of cocaine hidden inside. The customs agents retained the package and contacted employees of United Express Courier, the company by which the package was shipped. The employees were instructed to alert officials when anyone made an attempt to pick up the package.

The next day, a female caller inquired about the package and, on May 23, 1990, an individual wearing a beard and moustache and matching Eduardo Mota's description arrived at the courier company. The individual requested the shipment, claiming not to know whether it consisted of documents or a package. He was told to come back with more information, and the courier company notified the authorities. When the man returned, he refused to produce identification, signed "Jose Alberto Mota" for the package and left on foot, under the surveillance of customs agents.

Mota was seen entering a blue car driven by Hernando Arias, who was accompanied by his wife, Illiana Arias. The car proceeded along a circuitous route, stopped twice, and Mota was dropped off (with the package) at a gas station. Mota then took a taxi back to the hotel where he and the Ariases were staying, left the box outside a room on the 9th floor, and went to his room on the 5th floor, where he proceeded to shave his beard and moustache. In the meantime, surveillance agents had arrested the Ariases. The agents then went to Mota's room and arrested him.

Both of the Ariases and Mota made post-arrest statements, the substance of which were that they did not know that the package contained contraband and were just picking it up as a favor for a friend. Each statement named the other defendants, but no defendant's statement either implied or

---

1. The appellants have raised several issues on appeal. We address only those claims that we believe merit discussion.

expressly stated that any other defendant had knowledge of the illicit contents of the package. These statements were not tape recorded, nor were they ever reduced to written form and signed by the defendants.

The Ariases and Mota were indicted on June 1, 1990. Motions to sever were filed by all parties, and subsequently denied. A jury trial commenced August 28, 1990. In preliminary motions, counsel for each of the Ariases and Mota again moved to sever, and the motions were again denied. After the court denied these motions, counsel for the defendants and the Government engaged with the district court in an extended discussion aimed at redacting the defendants' post-arrest statements.

On the morning trial was to begin, Mota failed to appear in court. His counsel said that Mota had been informed of the time and place of the trial, and that several unsuccessful attempts had been made to locate the absent defendant. The court recessed twice the first day, to allow Mota additional time to appear, then announced its intention to try him *in absentia* if he failed to appear by the following morning. Over Mota's counsel's objection, the trial proceeded. In Mota's absence, his counsel remained and participated in the trial, questioning witnesses and making a closing argument.

At trial, the agents who received the defendants' statements were called and testified about the statements made by each defendant. The district court issued limiting instructions to the jury both at the time of the first agent's testimony and again in the court's final jury instructions. None of the defendants was available for cross-examination because Mota had failed to appear for the trial and both Illiana Arias and Hernando Arias chose not to testify.

Illiana and Hernando Arias were found guilty on Counts 1 and 2 (conspiracy to possess and possession with intent to distribute cocaine) and Counts 3 and 4 (conspiracy to import and importation of cocaine). Mota was found guilty only on Counts 1 and 2. A warrant was issued for Mota's arrest on August 29, 1990, and he was apprehended on September 26, 1990.

## II. DISCUSSION

### A. TRIAL *IN ABSENTIA*

▪ The first question presented by this case is whether a defendant can be tried *in absentia* after he voluntarily absents himself prior to the commencement of his trial. Applying the Supreme Court's recent decision in *Crosby v. United States,* —— U.S. ——, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), we hold that he cannot.

Rule 43 of the Federal Rules of Criminal Procedure, in pertinent part, reads as follows:

(a) **Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) **Continued Presence Not Required.** The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, *initially present,*

(1) is voluntarily absent *after* the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial).

Fed.R.Crim.P. 43 (emphasis added).

The Supreme Court's recent decision held that Rule 43 means precisely what it says: a defendant who absconds before trial may not be tried *in absentia.* In *Crosby,* Justice Blackmun, writing for a unanimous Court, could not have been more explicit, nor the Court's holding more applicable to Mota's case: "This case requires us to decide whether Federal Rule of Criminal Procedure 43 permits the trial *in absentia* of a defendant who absconds prior to trial and is absent at its beginning. We hold that it does not." *Crosby,* —— U.S. at ——, 113 S.Ct. at 749–50.

Because *Crosby* compels the reversal of Mota's conviction, we reverse and remand

**1142**

for a new trial of the charges against Mota.

## B. THE *BRUTON* ISSUE

■ Despite the efforts of the defendants' counsel and the district court to redact the post-arrest statements, Illiana and Hernando Arias each contend that admission of the statements, even in their redacted form, cannot survive scrutiny under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We disagree with both of the Ariases.[2]

Before addressing the substantive issues under *Bruton,* we note that the procedure employed by the district court in redacting the defendants' statements resulted in certain inconsistencies in the district court's rulings. Injecting such confusion into the already complex requirements of *Bruton* only compounds the difficult task of counsel and the court. While such procedural imperfections are troubling, we review only the final product of *Bruton* conferences, *i.e.,* the statements as testified to at trial.

In *Bruton,* the Supreme Court held that the confession of a nontestifying codefendant that inculpated another defendant was inadmissible at their joint trial. "[B]ecause of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt," admission of the confession impermissibly abridged the protections afforded to that incriminated defendant by the Sixth Amendment's Confrontation Clause. *Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622. Since *Bruton,* the Supreme Court has cautioned against blind application of the *Bruton* rule: "The Confrontation Clause has never been held to bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant." *Parker v. Randolph,* 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979).

"This Court has read *Bruton* to exclude only those statements by a non-testifying defendant which directly inculpate a codefendant." *United States v. Beale,* 921 F.2d 1412, 1425 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 99, 116 L.Ed.2d 71, *cert. denied,* —— U.S. ——, 112 S.Ct. 100, 116 L.Ed.2d 71, *and cert. denied,* —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). In other words, admission of a codefendant's statement is not error under *Bruton* where the statement "was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). Thus, "[f]or *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone." *United States v. Satterfield,* 743 F.2d 827, 849 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).

Illiana and Hernando Arias each argue that the mere reference in their respective statements to each other as "husband," "wife," or "spouse" was "highly prejudicial and powerfully incriminating." We cannot see how such references, standing alone, "directly inculpated" the other marital partner, particularly in light of the fact that both Illiana and Hernando Arias openly acknowledged—in their own statements—the marital relationship and their presence in Miami together during the relevant period. Moreover, any statements regarding their joint movements from the point that they were first observed at United Courier Express were corroborated by the surveilling agents.

The challenged post-arrest statements were not confessions, but attempts by the parties to exculpate themselves, and focused primarily on retrieving the box containing the computer monitor. Each of the defendants acknowledged his or her involvement with this aspect of the enterprise. The similarity among the various statements as to the details of the computer monitor pickup militates against the finding of a *Bruton* violation. *See, e.g., United States v. Paternina–Vergara,* 749

---

**2.** Our reversal of Mota's conviction on other grounds coupled with our affirmance of the convictions of his two codefendants means that no *Bruton* issue will arise in Mota's retrial. Accordingly, we do not address Mota's contention that *Bruton* error infected his conviction.

F.2d 993, 998–99 (2d Cir.1984) (concluding that because "[t]he *Bruton* rule is not violated ... when a co-defendant's confession is so similar to the defendant's confession that the two statements 'interlock,' " the substantially similar statements of two co-defendants were admissible "despite some inconsistency as to details"), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). To the extent that the statement of one of these defendants indicates that the defendants were acquainted with one another (or, in the case of Mr. and Mrs. Arias, were husband and wife), or that the other codefendants participated in the retrieval of the computer monitor, the statements were not "inculpatory standing alone."

The heart of the Ariases' defenses was the contention that he or she lacked knowledge of the cocaine secreted within the broken monitor. None of the statements of the other codefendants, as redacted and admitted at trial, suggested that either of the Ariases knew that cocaine was hidden inside the computer monitor. It was only in conjunction with other evidence properly admitted at the trial—the statements of the courier company employees, the testimony of the surveilling customs agents, and the physical evidence of the contraband—that the statements became incriminating. We thus find no *Bruton* violation.

## C. THE DELIBERATE IGNORANCE INSTRUCTION

Illiana Arias argues that the district court erred in giving the jury this Circuit's pattern jury instruction on deliberate ignorance as proof of knowledge. District courts have "broad discretion" in formulating jury instructions provided that "the charge as a whole accurately reflects the law and the facts." *United States v. Turner,* 871 F.2d 1574, 1578 (11th Cir.), *cert. denied,* 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989). As we stated in *Turner:*

> This Court will not reverse a conviction unless, after examining the entire charge, the Court finds that the issues of law were presented inaccurately, the charge included crimes not contained in the indictment, or the charge improperly

guided the jury in such a substantial way as to violate due process.

*Id.* (citations omitted).

■ This Court has consistently "recognized deliberate ignorance of criminal activity 'as the equivalent of knowledge.' " *United States v. Adair,* 951 F.2d 316, 319 (11th Cir.1992) (citation omitted). In *Adair,* we reaffirmed our view that the deliberate ignorance instruction is appropriately given when it is "based upon facts which would 'point in the direction of deliberate ignorance.' " *Id.* (citations omitted). This "standard is the same whether the evidence is direct or circumstantial." *Id.* Moreover, we agree with the view expressed by other circuits that where "the evidence supports both actual knowledge and deliberate ignorance, the instruction is properly given." *United States v. Ochoa–Fabian,* 935 F.2d 1139, 1142 (10th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992); *see also United States v. Mang Sun Wong,* 884 F.2d 1537, 1542 (2d Cir.1989), *cert. denied,* 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

■ In this case, the record indicates that Illiana and Hernando Arias arrived in Miami from Colombia on the same day as the cocaine-laden computer monitor. Between May 17 and May 23, the Ariases stayed in three different hotels in the Miami area and used three different residential addresses in the Chicago area for a rental car agreement and two hotel check-in records. Illiana Arias stated to a customs agent that a friend from Chicago asked her to make inquiries about the monitor. However, Illiana Arias could not or would not provide authorities with a means to contact this person. She refused to permit United Express Courier to deliver the computer monitor, and she did not take the opportunity to have the parcel transhipped to Chicago. Rather, the Ariases chose to engage in an elaborate pick-up scheme that was well-chronicled in the record. Illiana Arias admitted calling the courier company on two occasions, but refused to identify herself during either of these telephone calls. Although purportedly on vacation, the Ariases made a trial run to United Express Courier the day after they arrived in Miami

and then either agreed to help Mota or enlisted Mota in picking up the monitor. When Mota purportedly instructed Illiana Arias to call the courier company and misrepresent herself as Mota's secretary, Illiana Arias apparently placed the call. Illiana Arias stated that after Mota had retrieved the box, Hernando Arias looked inside and found that it was broken. According to Illiana Arias, this led her to feel something was wrong even though she acknowledged in her statement that she had been told that the monitor had been shipped to the United States to be repaired. None of the defendants offered any explanation about what was to be done with the computer monitor after it was picked up.

We have upheld a deliberate ignorance instruction in other cases in which drug couriers have avoided knowledge of the contents of their parcels. *See, e.g., United States v. Aleman,* 728 F.2d 492, 494 (11th Cir.1984); *United States v. Batencort,* 592 F.2d 916, 918 (5th Cir.1979). Likewise, we conclude that the district court committed no error in giving the deliberate ignorance instruction in this case.[3]

The convictions of Illiana Arias and Hernando Arias are AFFIRMED. The convictions of Eduardo Mota are REVERSED.

---

**3.** Illiana Arias also argues that the district court erred in failing to give a requested theory of defense instruction. There was no error because the district court's characterization of the requested instruction is correct: "That's not a theory of defense, that's a comment on the evidence."