[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-10255
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 09, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00193-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK ANTONIO SANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(January 9, 2006)**

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Mark Antonio Sanders appeals his conviction and 327-month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Sanders appeals on five grounds, asserting the district court erred by: (1) admitting evidence of the victim's identification of him from a photographic lineup; (2) failing to *sua sponte* conduct an *in camera* hearing to determine the admissibility of the photographic lineup; (3) instructing the jury on criminal intent; (4) failing to resolve his objections to the presentence investigation report (PSI);[1] and (5) committing constitutional error under *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm Sanders' conviction and sentence.

## I. DISCUSSION

A. *Testimony regarding photographic lineup*

We review the district court's rulings on admission of evidence for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000). "The extent to which counteracting and rehabilitative evidence may be received after the credibility of a witness has been attacked is a matter in which a trial judge

---

[1] This contention is without merit. In finding *Blakely v. Washington*, 124 S. Ct. 2531 (2004), did not apply to the Sentencing Guidelines, the district court fully resolved Sanders' objections under the then-existing state of the law in this Circuit. Accordingly, Sanders' claim the district court failed to resolve his objections to the PSI is erroneous. To the extent Sanders claims the court's ruling somehow did not adequately resolve his objections to the PSI, or that the court misapprehended the nature of his objections, he failed to bring those alleged misunderstandings to the court's attention, despite being given multiple opportunities to do so.

has broad discretion." *United States v. Barrentine*, 591 F.2d 1069, 1082 (5th Cir. 1979).[2]

The Government initially stated it did not intend to use evidence relating to the photographic lineup at trial. During the victim's testimony, while the Government attempted to address Sanders' argument the victim was acquainted with Sanders prior to the shooting, the victim brought up, without any prompting from the Government, that Agent Srivastava had shown him a photographic lineup from which he identified Sanders.[3] Sanders then proceeded on cross-examination to discredit the victim's ability to identify him by implying the victim had identified him as the shooter, without having seen a photograph of Sanders, solely based upon the Government having told the victim (1) someone was in custody, and (2) Sanders was the suspect arrested following the incident. The Government sought to introduce the evidence of the photographic lineup only after Sanders had attacked the victim's credibility regarding his ability to identify Sanders as the

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[3] Sanders does not assert the Government was in contact with the victim at some point prior to the day before the start of the trial, nor does Sanders allege the Government in any way delayed informing him regarding its meeting with the victim, during which the victim was shown the photographic lineup. Moreover, we need not consider Sanders' claim the photographic lineup was "unduly suggestive," as he raises this argument for the first time in his reply brief. *See United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999) (holding an appellant who raised an issue for the first time in his reply brief waived the claim).

person who shot him. Moreover, Sanders took advantage of his opportunity to cross-examine the victim in support of his defense that the victim's identification of him was unreliable, as the victim testified under cross-examination (1) he was probably drunk at the time he was shot, and (2) the "only reason" he said Sanders was the person who had shot him was because he knew the police had arrested somebody. We conclude the district court did not abuse its discretion in allowing the Government to rehabilitate the victim's testimony by introducing into evidence the photographic lineup and the victim's prior identification of Sanders.[4]

B. In camera *hearing*

Because Sanders did not raise this claim before the district court, we will not reverse unless the error "constitute[s] 'plain error' amounting to a miscarriage of justice seriously affecting the fairness, integrity, or public reputation of the proceeding." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir.1990). Although there is no *per se* rule requiring an *in camera* hearing, an *in camera*

---

[4] Contrary to Sanders' contention, the testimony of Officers Wolcott and Cottrell did not conflict regarding whether Sanders possessed the firearm, as Officer Cottrell testified that, during the pursuit of Sanders, she was positioned directly behind Officer Wolcott, and, consequently, she was unable to physically see whether Sanders was carrying a weapon. Moreover, Sanders' claim that Officer Wolcott "failed to identify him as the shooter" is misleading, because, although Officer Wolcott was not able to identify Sanders at the time Agent Srivastava showed him a photographic lineup a month or two after the original incident, Officer Wolcott did not witness Sanders shoot the victim, but only heard the gunfire after the victim had been shot. Accordingly, the only person who testified at the trial who had witnessed the actual shooting was the victim.

4

hearing may be constitutionally required if there are "unusual, special, out of the ordinary, or particularly prejudicial circumstances." *United States v. Mills*, 704 F.2d 1553, 1563–64 (11th Cir. 1983).

Because Sanders did not request the court conduct an *in camera* hearing regarding the photographic lineup, and cites no authority supporting his contention that unusual and extraordinary circumstances existed requiring an *in camera* hearing be conducted *sua sponte* by the court, the district court did not plainly err by not conducting an *in camera* hearing.

C. *Jury Instruction*

The propriety of the trial court's jury instruction is a question of law subject to de novo review. *United States v. Drury*, 396 F.3d 1303, 1313 (11th Cir.), *cert. denied*, 126 S. Ct. 336 (2005). "District courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts." *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993) (internal quotations and citation omitted). "This Court will not reverse a conviction unless, after examining the entire charge, the Court finds that the issues of law were presented inaccurately, the charge included crimes not contained in the indictment, or the charge improperly guided the jury in such a substantial way as to violate due process." *Id.* Pursuant to Georgia statute, a person commits the

offense of (1) "armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another, by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon," O.C.G.A. § 16-8-41(a); and (2) "criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime," O.C.G.A. § 16-4-1.

A federal grand jury indicted Sanders for knowingly possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g). The indictment contained a special finding that the offense involved the use and possession of a firearm in connection with the felony offenses of aggravated assault and attempted armed robbery. The special jury instructions accurately defined armed robbery and criminal attempt pursuant to Georgia statute. The victim testified two men approached him, after which one of the men pulled out a gun, told him to put his hands up, and, following a brief struggle and the victim's attempt to flee, demanded his money. Contrary to Sanders' contentions, the trial record does support a finding as to criminal attempt to commit an armed robbery. Although the victim testified he "threw" approximately $200 in the air and thought the assailants "picked the money up" and ran, and Officers Wolcott and Cottrell testified they saw the assailants searching the victim. Officer Wolcott

6

also testified no money or valuables were recovered from Sanders. Moreover, although Officers Wolcott and Cottrell testified they witnessed the men searching the victim, neither of the officers testified they had witnessed either of the two assailants actually take anything from the victim. Accordingly, the district court's special instructions to the jury accurately reflected both the law and the facts and it was not error to instruct the jury on criminal attempt. *See Arias*, 984 F.2d at 1143.

D. *Booker*

Because Sanders raised an objection based on *Blakely* at sentencing, we review the issue de novo, and reverse "only if any error was harmful." *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). "Constitutional errors are harmless where the government can show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." *United States v. Phillips*, 413 F.3d 1288, 1293 (11th Cir. 2005) (internal quotations and citation omitted).

In *Booker*, the Supreme Court held the mandatory nature of the Guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. *Booker*, 125 S. Ct. at 756. The Court explicitly reaffirmed its rationale in *Apprendi* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts

7

established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* We have explained there are two types of *Booker* error: (1) Sixth Amendment error based upon sentencing enhancements in a mandatory guideline system neither admitted by the defendant nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon applying the Guidelines as mandatory. *United States v. Shelton*, 400 F.3d 1325, 1329-30 (11th Cir. 2005).

As an initial matter, wet need not consider Sanders' claim the district court committed statutory *Booker* error by applying the Guidelines in a mandatory fashion, as he raises this argument for the first time in his reply brief, and his initial brief was filed after our decision in *Shelton*. *See Dicter*, 198 F.3d at 1289. Furthermore, Sanders' claim the district court incorrectly applied an enhancement to him based upon the application of a cross-reference is erroneous, as he was sentenced as a armed career criminal pursuant to § 4B1.4, without regard to the cross-reference. Moreover, to the extent Sanders challenges the district court's use of the cross-reference based upon additional facts not found by the jury, specifically, the specific crime associated with his firearm possession, any error on the part of the district court was harmless because Sanders was not sentenced pursuant to the cross-reference, but, rather, as an armed career criminal.

"In *Almendarez-Torres v. United States*, the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." *United States v. Marseille*, 377 F.3d 1249, 1257 (11th Cir.), *cert. denied* 125 S. Ct. 637 (2004). After *Booker*, we held the decision in *Almendarez-Torres* was "left undisturbed by *Apprendi*, *Blakely*, and *Booker*," and "a district court does not err by relying on prior convictions to enhance a defendant's sentence." *Shelton*, 400 F.3d at 1329. Insofar as the district court's enhancement of Sanders' offense level under § 4B1.4 merely involved determinations that he had prior qualifying convictions, the enhancement did not implicate the *Apprendi/Blakely/Booker* line of cases, as those cases clearly exempt prior convictions from the types of facts that must be admitted by the defendant or proved to a jury beyond a reasonable doubt in order to support a sentence enhancement.

Finally, Sanders' reliance upon the Supreme Court's recent decision in *Shepard v. United States*, 125 S. Ct. 1254 (2005), is unconvincing because only a plurality of the Court joined the discussion of the continuing viability of the prior-conviction exception. Although *Shepard* arguably casts doubt on the future prospects of *Almendarez-Torres*, the Supreme Court has not explicitly overruled

9

*Almendarez-Torres* and, as a result, this Court must follow *Almendarez-Torres*. *United States v. Camacho-Ibarquen*, 410 F.3d 1307, 1316 n.3 (11th Cir.) *cert. denied*, 126 S. Ct. 457 (2005). Consequently, the district court did not violate Sanders' Sixth Amendment rights under *Booker* by enhancing his sentence based on his prior convictions and the finding he possessed the firearm during the commission of another felony.

## II. CONCLUSION

The district court did not err in admitting evidence of the victim's identification of him from a photographic lineup, failing to *sua sponte* conduct an *in camera* hearing to determine the admissibility of the photographic lineup, and instructing the jury on criminal intent. Additionally, the district court did not fail to resolve Sanders' objections to the PSI or commit constitutional error under *Booker*.

**AFFIRMED.**