[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10568
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 6, 2012
JOHN LEY
CLERK

D.C. Docket No. 7:10-cr-00185-LSC-JEO-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE ANTONIO HERRERA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 6, 2012)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Jose Antonio Herrera appeals his conviction and sentence of 210 months of

imprisonment for possession with intent to distribute five kilograms or more of cocaine. 21 U.S.C. § 841(a)(1). Herrera argues about prosecutorial misconduct, the sufficiency of the evidence, a jury instruction on deliberate ignorance, the admission of testimony, and the denial of relief under the safety valve. We affirm.

Herrera argues that the government failed to disclose exculpatory evidence in violation of his constitutional right to due process, Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), but we disagree. "A Brady violation . . . occur[s] if the prosecution delays in transmitting evidence during a trial, but only if the defendant can show prejudice." United States v. Beale, 921 F.2d 1412, 1426 (11th Cir. 1991). Before Herrera's first trial, a magistrate judge ordered the prosecution to produce an agent's notes of an interview of Herrera, and the prosecution complied with that order before Herrera's second trial. Fed. R. Crim. P. 16(a)(1)(B)(ii). The magistrate judge's order to produce the notes was in a footnote of an order that neither party noticed before Herrera's first trial. Herrera argues that, under Brady, the evidence should have been produced sooner, but he fails to identify any information in the notes that was "favorable" to him or "material to the establishment of his guilt or innocence." Beale, 921 F.2d at 1426. The district court did not abuse its discretion when it denied Herrera's motion to dismiss based on the alleged Brady violation.

2

Herrera argues that the government failed to prove that he knowingly possessed or intended to distribute the 98.35 grams of cocaine found in a hidden compartment of his tractor trailer truck, but the record supports his conviction. When Trooper Darrell Seymour stepped up to the window of Herrera's truck to conduct a commercial vehicle inspection, he noticed immediately what appeared to be a hidden compartment in the bunk area that had been covered with carpet in different color than the rest of the cab. Herrera's conduct was inconsistent with that of a commercial truck driver with two years experience: Herrera provided loose sheets of paper when asked to produce his log book, and he was unable to trigger his low air warning device without Seymour's assistance. Herrera also acted extremely nervous during the inspection. Herrera's eyes opened "real wide" and he had a "real shocked and surprised look" when Seymour asked Herrera to produce safety articles for the truck that are stored typically in the bunk; upon climbing inside the patrol car, Herrera laughed uncomfortably and asked if he could "go out there and dig up a pine tree"; while inside the police vehicle, Herrera scratched himself and coughed repeatedly; and, when questioned about the tree, Herrera stated that he would remove the tree from the ground using his hands in lieu of a shovel. After Seymour discovered the cocaine, Seymour told Herrera that he was being arrested for "the dope," and Herrera repeated, "the

dope." Later, Herrera told Seymour that he had "had a bad feeling about this trip." Less than two months earlier, Charles Engle of the Immigration and Customs Enforcement agency had shown Herrera where a hidden compartment had been added to the sleeping compartment in another truck he was driving for the same trucking company. Although the compartment was empty, Engle explained to Herrera that similar compartments were used to transport illegal drugs. Based on Herrera's encounters with law enforcement, the jury reasonably found that Herrera had a "consciousness of guilt," United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998), and the district court did not err by denying Herrera's motion for a judgment of acquittal. In the light of the evidence against Herrera, the district court also did not abuse its discretion when it instructed the jury about both actual knowledge and deliberate ignorance. See United States v. Arias, 984 F.2d 1139, 1143–44 (11th Cir. 1993).

Herrera argues that the district court should have excluded Engle's testimony as unduly prejudicial, but Herrera's argument fails. Evidence about Herrera's observation of another hidden compartment in another truck owned by the same company and his notice of the purpose for such a compartment was material and, as he concedes, not a prior bad act governed by Federal Rule of Evidence 404(b). Engle's testimony was probative and not unduly prejudicial.

4

Engle's testimony established only that he informed Herrera about the presence and purpose of a hidden compartment.

Herrera also argues that he was entitled to relief under the safety valve, but we disagree. To qualify for relief under the safety valve, a "defendant has an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (internal quotation marks omitted); 18 U.S.C. § 3553(f); United States Sentencing Guidelines Manual § 5C1.2(a) (Nov. 2010). In response to his presentence investigation report, Herrera submitted a four-page statement in which he denied any knowledge about the cocaine, and the district court discredited Herrera's statement consistent with the jury's verdict. The district court did not err by denying Herrera's request for relief under the safety valve.

We **AFFIRM** Herrera's conviction and sentence.