[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13294
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-20855-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARL RICHARD SAMSON,
JACKENSON CONSTANT,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 27, 2013)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Jackenson Constant and Carl Richard Samson jointly appeal their convictions for conspiring to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); attempting to interfere with commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and possessing firearms in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.  On appeal, Constant and Samson jointly argue: 1) the district court violated their Sixth Amendment Confrontation rights by permitting two detectives to testify, and the government to argue in its closing, that two severed co-defendants gave recorded post-arrest statements that implicated them in the charged offenses; and 2) the district court improperly admitted opinion testimony from two police officers that Constant's initial post-arrest statement was not credible and that both he and Samson were guilty as charged.  Additionally, Samson argues the district court erred by admitting Constant's post-arrest statement because it directly implicated him and violated his Confrontation rights.  We affirm.

## I.

This case arises out of an armed-robbery that took place at a Wendy's Restaurant ("Wendy's") in Miami, Florida.  Throughout the three-day trial, the government presented evidence against Constant and Samson, including Constant's initial post-arrest statement denying involvement and subsequent confession in his second post-arrest statement, video surveillance footage from the

2

Wendy's and a nearby business, Samson's DNA on articles recovered from the car used in the robbery, two police officers' identifications of Constant, and two police officers' identifications of Samson.

At their joint trial, robbery detective Elio Garcia testified that he conducted Constant's initial post-arrest interview, twice challenging his version of the story, and the second time telling Constant that he did not believe him.

Another detective, Jose Eduarte, testified that because he did not believe that Constant's initial story was credible, he decided to ask him additional questions in a second interview. He further stated he participated in the "interviews of subjects [Emile] Myrthil and [Aldair] Mentor," without identifying them as severed co-defendants, and that while Constant did not agree to be recorded, "other individuals that night" consented to being taped.

Constant's first statement revealed, in relevant part, that "three subjects with guns" emerged from a gold-colored vehicle used in the robbery, and that he and these subjects ran away from the scene once the officer arrived. Constant's second statement referenced the "other individuals" he robbed the Wendy's with, and otherwise focused on his own involvement in the robbery.

During the government's closing statement, it stated the detectives also obtained post-arrest statements from co-defendants Myrthil and Mentor.

3

Following defense objections and motions based on *Bruton*,[1] including a motion

for a mistrial, the district court instructed the jury to disregard the isolated

comment.

## II.

This court generally reviews the district court's rulings on admission of

evidence for an abuse of discretion. *United States v. Jimenez*, 224 F.3d 1243, 1249

(11th Cir. 2000). However, "[e]videntiary errors that are not specifically objected

to at trial are reviewed for plain error." *United States v. Williford*, 764 F.2d 1493,

1502 (11th Cir. 1985). Moreover, if defendants fail to object to alleged

Confrontation Clause violations at trial, we also review them for plain error.

*United States v. Brazel*, 102 F.3d 1120, 1141 (11th Cir. 1997).

This court reviews preserved *Bruton* claims for an abuse of discretion and

evaluates any *Bruton* error for harmlessness beyond a reasonable doubt, but where

the defendant has failed to preserve his *Bruton* claim, this court reviews only for

plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).

To establish plain error, defendants must demonstrate that: (1) there was

error in the lower court's action; (2) such error was plain, clear, and obvious; and

(3) the error affected substantial rights. *United States v. Foree*, 43 F.3d 1572, 1578

(11th Cir. 1995). The "erroneous admission of evidence does not warrant reversal

---

[1] *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

4

if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *See United States v. Harriston*, 329 F.3d 779, 789 (11th Cir. 2003) (internal quotation marks omitted) (noting that error is harmless "where there is overwhelming evidence of guilt."). Even if these three elements are present, this court will not reverse unless the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.*

## A.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. It applies not only to in-court testimony but also to out-of court statements introduced at trial. *Crawford v. Washington*, 541 U.S. 36, 50-51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004). Prior testimonial statements may be admitted only if the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. *Id.* at 68, 124 S. Ct. at 1374. However, the Confrontation Clause "prohibits *only* statements that constitute impermissible hearsay," and does not bar "the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *United States v. Jiminez*, 564 F.3d 1280, 1286-87 (11th Cir. 2009) (quoting *Crawford*, 541 U.S. at 59 n.9, 124 S. Ct. at 1369).

This court has:

5

long recognized that "[s]tatements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials" subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement.

*Jiminez*, 564 F.3d at 1287 (holding that a detective's testimony that a co-defendant made a post-arrest statement implicating the defendant did not violate *Crawford* because it was admitted for the non-hearsay purpose of explaining to the jury why the detective re-interviewed the defendant and why he might have changed his story).

Finally, the purpose of closing argument is to help the jury evaluate the evidence. *United States v. Rodriguez*, 765 F.2d 1546, 1559 (11th Cir. 1985). During closing argument, the prosecutor is forbidden from making improper suggestions, insinuations, and assertions calculated to mislead the jury. *Id.* at 1560. Prosecutorial misconduct during closing argument requires a new trial only where the remarks were improper and prejudiced the defendants' substantial rights. *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999). In order to assess the prejudicial impact of the comments, we evaluate them in the context of the trial as a whole and assess their probable impact on the jury. *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). Moreover, the jury is presumed to follow

the district court's instructions. *United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996).

Because neither Constant nor Samson objected to the admission of any testimony related to Myrthil's and Mentor's post-arrest statements, we review any alleged violations only for plain error. *Brazel*, 102 F.3d at 1141. Importantly, Constant and Samson do not identify the particular testimony they challenge on appeal, or the law enforcement witness who gave this testimony. In any event, the contents of Myrthil's and Mentor's post-arrest statements were never admitted into evidence, Garcia never mentioned Myrthil or Mentor by name, and Eduarte only mentioned that he participated in their interviews, and that "other individuals that night" consented to giving recorded statements. Moreover, even assuming the district court erred in this respect and that the error was plain, it did not affect Constant and Samson's substantial rights, nor did it seriously affect the fairness, integrity, or reputation of the judicial proceeding because of the overwhelming evidence of guilt presented against them.

With regard to the government's closing argument referring to Myrthil's and Mentor's statements, while the government argued facts not in evidence—that the police got statements from the co-defendants as opposed to simply interviewing them—the district court did not abuse its discretion in issuing a limiting instruction, as opposed to granting a mistrial. *Jimenez*, 224 F.3d at 1249. Given

the weight of the evidence presented against Constant and Samson, assessed in the context of the trial as a whole, any prejudice from the government's remark was remedied by the court's prompt instruction to disregard the isolated comment.

## B.

A witness may testify to a matter "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.  Moreover, "[e]vidence to prove personal knowledge may consist of the witness's own testimony." *Id.*  More specifically, if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge.  Fed. R. Evid. 701.  The limitation on lay opinion testimony is the "familiar requirement of first-hand knowledge or observation," and "is phrased in terms of requiring that the lay witness's testimony be helpful in resolving issues." *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011).

Relevant evidence may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403.  However, "Rule 403 is an extraordinary remedy which should be used only sparingly." *Jayyousi*, 657 F.3d at 1108 (internal quotation marks omitted).

8

Constant and Samson did not object to the detectives' testimony before the district court.  Accordingly, on appeal, we conclude that the court did not plainly err in allowing detectives Garcia and Eduarte to testify as to Constant's credibility as revealed through his initial post-arrest statement.  With respect to Garcia, his testimony that he twice challenged Constant's version of the story, the second time telling Constant that he did not believe him, was rationally based on his perception and helpful to clearly understanding why Constant was ultimately interviewed a second time by Eduarte.  Fed. R. Evid. 701.  In terms of Eduarte's testimony, which was limited to him stating that he did not believe that Constant's initial story was credible, its admission was not improper because it was offered for the purpose of explaining why Eduarte decided to ask Constant additional questions in a second interview.  In relation to Samson, because the testimony focused solely on Constant, it is unclear how either Garcia's or Eduarte's testimony alluded to his role in the robbery or implicated his guilt in any way. Therefore, the district court did not err in admitting the testimony regarding Constant's initial post-arrest statement.

Finally, even if the district court plainly erred in admitting this testimony into evidence, as noted above, any such errors were harmless given the other overwhelming evidence of guilt presented by the government.

9

C.

With respect to Samson's claim that the district court erred by admitting

Constant's post-arrest statements into evidence, in *Bruton*, the Supreme Court held

that the Confrontation Clause was violated by the admission of a co-defendant's

confession that inculpated the defendant at their joint trial, despite a curative

instruction given to a jury. *Bruton*, 391 U.S. at 126, 88 S. Ct. at 1622-23.

However, only those statements by a non-testifying co-defendant that directly

inculpate or "powerfully incriminate" the defendant give rise to a constitutional

violation. *United States v. Arias*, 984 F.2d 1139, 1142 (11th Cir. 1993).

"A statement is powerfully incriminating if it 'expressly implicates' the

defendant." *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1481 (11th Cir.

1992). No *Bruton* problem exists, however, when the statement is "not

incriminating on its face, and became so only when linked with evidence later

introduced at trial." *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S. Ct. 1702,

1707, 95 L. Ed. 2d 176 (1987). Even the admission of inculpatory statements

constitutes harmless error if other admissible evidence of guilt is so overwhelming

that the admission of the non-testifying co-defendant's statement is insignificant by

comparison. *United States v. Veltmann*, 6 F.3d 1483, 1500 (11th Cir. 1993).

Here, the district court did not err, plainly or otherwise, because neither of

Constant's post-arrest statements directly inculpated or "powerfully incriminated"

10

Samson.  *Arias*, 984 F.2d at 1142.  No direct reference was made to Samson, and a jury would not logically conclude that Constant's general references to "three subjects" or "individuals" necessarily represented that Samson was one of them. *Mendoza-Cecelia*, 963 F.2d at 1481.

While Constant's references to three other robbers might have helped incriminate Samson when linked with the other evidence presented at trial, this is insufficient to sustain a *Bruton* violation, as the statements were not incriminating on their faces.  *Marsh*, 481 U.S. at 208, 107 S. Ct. at 1707.  Moreover, even if Constant's statement successfully inculpated Samson, the other aforementioned admissible evidence of Samson's guilt rendered Constant's statement insignificant by comparison.  *Veltmann*, 6 F.3d at 1500.

**AFFIRMED.**

11