[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11058
Non-Argument Calendar

_____

D.C. Docket No. 6:17-cr-00140-PGB-LRH-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACQUES JEANTY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 22, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Jacques Jeanty was convicted of conspiring to steal money from the United States and stealing property from the United States for his participation in a tax refund fraud conspiracy. Jacques pleaded not guilty, and, at trial, argued that he was ignorant of the conspiracy and that the other conspirators—his children and an employee of a family business—were actually to blame. The district court gave a deliberate ignorance instruction to the jury, which thereafter convicted Jacques. The district court then sentenced Jacques to 78 months' imprisonment and did not grant his request for a downward variance based on his poor health and lack of criminal history.

Jacques appeals, challenging the district court's deliberate ignorance jury instruction and the lack of a downward variance in his sentence. After careful consideration, we affirm the district court's deliberate ignorance jury instruction. And because we lack jurisdiction to consider Jacques's challenge to the denial of his request for a downward variance, we dismiss that portion of his appeal.

## I.    BACKGROUND

### A.    Factual Background

Jacques's daughter, Jeanine Jeanty, owned and operated Jahira's Convenience Store. Jahira's employed Jacques's son, Jean, as well as Samuel Belizaire. In October 2010, Jeanine and Jean—together with Jacques and Belizaire—began submitting fraudulent federal tax returns.

2

The conspirators' scheme was simple: Jeanine purchased stolen identification information and then she, Jean, and Belizaire used the information to prepare fraudulent tax returns. The trio carried out the scheme at Jahira's. When the conspirators filled out the fraudulent tax returns, they would use various addresses that did not belong to the victims, including several addresses for properties that belonged to Jacques or one of the other conspirators. Based on the information in the fraudulent tax returns, the Internal Revenue Service ("IRS") would mail refund checks addressed to the victims to the listed addresses. After receiving the checks, one of the conspirators would bring them to Jahira's. Jeanine, Jean, or Belizaire would falsely endorse the checks, and then one of the conspirators would deposit the checks into one of the seven bank accounts the conspirators had opened to receive the tax return checks. In total, the conspirators deposited 400 fraudulent checks totaling $2,764,771 into the seven bank accounts.

Jacques was involved in this scheme in several ways. He was sometimes at Jahira's while the others prepared the fraudulent tax returns. He also owned several properties to which the conspirators had arranged to have the checks mailed. For example, Jacques's driver's license listed his address as an apartment on Ernest Drive from 2010–2012. Jacques later told IRS agents that he lived there. The IRS mailed eight refund checks to various taxpayers at that address between April 2011 and March 2012. Another refund check was sent to a different property

3

that Jacques owned on Galbi Drive.  When a refund check arrived at one of Jacques's properties, he sometimes brought the check to Jahira's himself and sometimes asked Jean to pick it up for him.  Jacques was sometimes at Jahira's when one of the other conspirators falsely endorsed a refund check.

Jacques also opened eight bank accounts in 2012—some of them personal, some of them jointly with another conspirator, and some of them on behalf of Jahira's.  The conspirators—including Jacques himself—deposited fraudulent tax return checks into these accounts.  Jacques and Jean also registered a limited liability corporation, J&J Multi Services Co., LLC, and obtained a license for it as a check-cashing business.  They listed Jacques as the registered agent and manager of the company on the registration.  J&J was a shell company and Jacques and Jean deposited 153 fraudulent return checks totaling $960,922 into the J&J account.

Jacques was out of the country for part of the duration of the fraud scheme. He was travelling and absent for six non-consecutive months of the full 21 months the scheme lasted.

## B.    Procedural History

A grand jury indicted Jacques on one count of conspiring to steal money from the United States, in violation of 18 U.S.C. §§ 371 and 641, and one count of stealing property from the United States, in violation of 18 U.S.C. §§ 641 and 642. Jacques pleaded not guilty to both charges and his trial began in August 2018.

4

However, the trial resulted in a hung jury. Jacques's second trial, the one at issue in this appeal, began in December 2018.

Jacques's defense was ignorance of the conspiracy. After the close of evidence, the district court held an informal charge conference with the parties to discuss the jury instructions. At the conference, Jacques objected to the district court's inclusion of a jury instruction regarding deliberate ignorance. The district court overruled Jacques's objection, explaining that Jacques's ignorance defense and the totality of the facts—checks addressed to other people arrived at his residence or properties he controlled, he brought those checks to the convenience store, he opened multiple bank accounts, and the checks were not directly related to the convenience store's business—supported an inference that there was a high probability Jacques was aware of the fraudulent checks and purposefully avoided learning all the facts. Jacques maintained his objection to the deliberate ignorance instruction.

The district court's instruction to the jury on deliberate ignorance was:

If a Defendant's knowledge of a fact is an essential part of a crime, it is enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact did not exist.

"Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents.

5

So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed his eyes.

But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew about the possession of the controlled substance.

The jury found Jacques guilty on both counts.

At sentencing, the district court found Jacques's total offense level to be 28 and that he had a criminal history category of I, which resulted in a U. S. Sentencing Guidelines range of 78 to 97 months' imprisonment. Jacques argued that he should receive a non-prison sentence, or, in the alternative, a downward variance to a 24-months' imprisonment. He argued that he was not well-educated and came from a broken home and asserted that "the guidelines [were] very tough" on him, especially given that his children were the principal actors in the scheme. Jacques also pointed out that he had no criminal history and was unlikely to commit future crimes. Finally, he explained that he had physical health issues—heart issues and general poor physical health that required eight prescriptions—that should be taken into consideration.

The district court sentenced Jacques to a term of 78 months' imprisonment: 60 months for the conspiracy conviction and 78 months for the fraud conviction, to run concurrently, with two years of supervised release and a restitution payment of $2,764,769. The district court explained that it had considered the sentencing

factors in 18 U.S.C. § 3553(a): the nature of the crime; Jacques's lack of criminal history; and the need for the sentence to reflect the gravity of the crime, promote respect for the law, and to provide just punishment. The district court noted that the fraud scheme lasted for two years, was complex, and that Jacques had been a participant from the scheme's inception and had played a central role by creating a fraudulent company and using it to open bank accounts to conceal the illegal activity. The district court further explained that the 78-month sentence was adequate because the public needed to understand that commonplace fraud schemes such as this one carried serious consequences and that the sentence would promote respect for the law and provide just punishment. The district court also noted that it had denied Jacques's request for a non-prison sentence or a downward variance based on its assessment of the § 3553(a) factors.

Jacques timely appealed.

## II.    DISCUSSION

### A.    The Deliberate Ignorance Jury Instruction

Jacques argues that the district court erred by instructing the jury on deliberate ignorance because the facts do not support the instruction. He argues that he did not know about the fraud committed by the other conspirators and that the government presented no evidence that he knew his own actions were illegal or that he deliberately avoided learning the facts.

7

We review *de novo* a challenge to the district court's jury instructions. *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993). "[D]istrict courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts." *United States v. Williams*, 526 F.3d 1312, 1320 (11th Cir. 2008) (quotation omitted). "[W]e will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (citation and quotation marks omitted). "If the instructions accurately reflect the law, we give the [district] court wide discretion in determining the style and wording of the instructions." *Williams*, 526 F.3d at 1321.

"[A] deliberate ignorance instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposefully contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009) (quoting *United States v. Perez-Tosta*, 36 F.3d 1552, 1564 (11th Cir. 1994)). This standard is the same for both direct and circumstantial evidence. *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993). An erroneous deliberate ignorance instruction is harmless if the jury was properly instructed that finding deliberate ignorance requires proof

8

beyond a reasonable doubt, the jury was instructed on a theory of actual knowledge, and there was sufficient evidence to support that theory. *Stone*, 9 F.3d at 937–38; *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008).

Here, the district court did not err when it gave a deliberate ignorance jury instruction. Numerous pieces of evidence support the inference that Jacques was aware of a high probability that his conduct was illegal and that he purposefully avoided learning all of the facts. For example, many checks addressed to other people arrived at Jacques's residence and other properties he owned, and he brought those checks to Jahira's and either deposited them into multiple bank accounts that he had opened or gave them to another conspirator to deposit. The checks were not obviously related to Jahira's business. Jacques opened a bank account in the name of a shell company. He was present at Jahira's while the other conspirators were preparing fraudulent tax returns and fraudulently endorsing tax refund checks. Taken together, these facts provide circumstantial evidence that Jacques attempted to remain ignorant of the legality of his own actions and the source of the money while allowing the other conspirators to continue operating. Accordingly, the district court's deliberate ignorance instruction was not erroneous.[1]

---

[1] Even if the deliberate ignorance instruction was erroneous, any error that may have resulted was harmless because the district court also included an instruction on actual knowledge to the jury. *See Stone*, 9 F.3d at 937–38; *Steed*, 548 F.3d 977.

### B.    Jacques's Request for a Downward Variance

Jacques argues that the district court abused its discretion by denying his request for a downward variance. He asserts that his lack of criminal history and poor health support his request for a downward variance and that the district court had discretion under U.S.S.G. § 5K2.20[2] to grant his request.

We lack jurisdiction to review a district court's decision to deny a request for a downward variance unless the district court incorrectly believed that it lacked the authority to grant the variance. *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) (citing *United States v. Winningear*, 422 F.3d 1241, 1245 (11th Cir. 2005)). We have further explained that "when nothing in the record indicates otherwise, we assume the sentencing court understood it had authority to depart downward." *Id.* (quoting *United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir. 1999)). Jacques points to nothing in the transcript of the sentencing proceedings that indicates that the district court believed it lacked the authority to grant a downward variance. To the contrary, the district court analyzed the 18 U.S.C. § 3553(a) factors and determined that Jacques's sentence was sufficient to satisfy

---

[2] U.S.S.G. § 5K2.20 provides, in relevant part, that:

The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.

those factors while remaining on the low end of the guidelines range.  That analysis suggests to us that the district court understood that it had discretion to grant a downward variance but chose not to do so.  Thus, we do not have jurisdiction to review the merits of Jacques's request for a downward variance.

*    *    *

For these reasons, we affirm.

**AFFIRMED.**