[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12199

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

OBUKOWHO NELSON POTOKRI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cr-60147-AHS-1

_____

Before WILSON, LUCK, and MARCUS, Circuit Judges.

PER CURIAM:

Obukowho Nelson Potokri appeals from his conviction after a jury trial and the ensuing 48-month sentence for aiding and abetting theft of government funds in violation of 18 U.S.C. §§ 641 and 2. At trial, the jury heard evidence that in May 2020 over $13,000 in federal pandemic relief funds were deposited into Potokri's bank account from the Massachusetts Department of Unemployment Assistance ("MADUA"), following the filing of fraudulent unemployment applications in the names of two identity fraud victims, Douglas Murray and William Reed. On appeal, Potokri argues that: (1) the district court erred in instructing the jury about deliberate ignorance; and (2) his sentence is procedurally and substantively unreasonable. After thorough review, we affirm.

## I.

"We review the legal correctness of a jury instruction *de novo*, but defer on questions of phrasing absent an abuse of discretion." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). The district court has broad discretion to formulate its jury charge as long as the charge as a whole accurately reflects the law and facts. *United States v. Williams*, 526 F.3d 1312, 1320 (11th Cir. 2008). We "will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir.

2014) (quotations omitted).  In determining whether there is sufficient evidence to support a jury charge, we review the evidence in the light most favorable to the government.  *United States v. Calhoon*, 97 F.3d 518, 533 (11th Cir. 1996).

We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion."  *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (quotations omitted).  When reviewing a sentence for procedural reasonableness, we consider legal issues *de novo* and review factual findings for clear error.  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).  We specifically review *de novo* whether a factor that the district court considered is improper.  *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008).

## II.

First, we are unpersuaded by Potokri's claim that the district court erred in instructing the jury on deliberate ignorance.  We have long recognized that "the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance."  *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006) (quotations omitted).  Deliberate ignorance, as an alternative to actual knowledge, can be proven when a defendant is suspicious but does not make further inquiries so as to remain ignorant.  *Id*.  This means that the deliberate ignorance instruction is appropriate if the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all the facts in order to have a

defense in the event of a subsequent prosecution. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237–38 (11th Cir. 2009). Deliberate ignorance may be shown by either direct or circumstantial evidence and the standard is the same for both. *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993).

We've cautioned against overuse of the deliberate ignorance instruction, noting the danger that juries will convict on the basis that the defendant should have known that the conduct was illegal, akin to a negligence standard. *United States v. Rivera*, 944 F.2d 1563, 1570 (11th Cir. 1991). District courts give the deliberate ignorance instruction in error when there is relevant evidence of only actual knowledge rather than deliberate avoidance. *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008).

Any error in giving a deliberate ignorance instruction is harmless, however, if the jury was properly instructed that finding deliberate ignorance requires proof beyond a reasonable doubt, the jury was also instructed on the theory of actual knowledge, and there was sufficient evidence to support actual knowledge. *United States v. Stone*, 9 F.3d 934, 937–39 (11th Cir. 1993); *see also Steed,* 548 F.3d at 977 ("[I]nstructing the jury on deliberate ignorance is harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge."). This is so because we assume that juries obey the district court's instructions, and if "there was insufficient evidence of deliberate ignorance to prove that theory beyond a reasonable doubt, then the jury, following the instruction, as we must assume

23-12199                Opinion of the Court                5

it did, did not convict on deliberate ignorance grounds." *Stone*, 9 F.3d at 938.

In *United States v. Maitre*, we held that a deliberate ignorance instruction was warranted in a trial for various identity theft and conspiracy to commit identity theft charges despite the defendant's claim that the government failed to show she was aware of and participating in the conspiracy.  898 F.3d 1151, 1157 (11th Cir. 2018).  There, the defendant lived in a house full of stolen goods found in plain view and in her bedroom and closet, she accepted 15 to 20 purses from a boyfriend who was unemployed even after she became aware of a police investigation into his conduct, and she never asked about other people's wallets inside the purses or about new items suddenly appearing in her home.  *Id.*  We concluded that these facts suggested deliberate ignorance and that the district court correctly issued the instruction.  *Id.*

The district court in Potokri's trial similarly gave the jury an instruction on deliberate ignorance.  As we've briefly discussed, the crime here occurred in May 2020, when two applications -- using the personally identifiable information of two men, Murray and Reed -- were filed for federal Unemployment Assistance ("UA") funds from MADUA, the Massachusetts agency for unemployment assistance, based on the applicants' alleged pandemic-related hardship.  The government never determined who actually filled out the applications online, but both applications listed a savings account in Potokri's name for direct deposit of the UA benefits.  Over $13,000.00 in UA funds were paid into Potokri's account based on

Murray's application before the government froze the account when certain information could not be verified; no funds were ever paid out based on the application in Reed's name because the government realized earlier on that it could not verify his information. In his defense, Potokri argued to the jury that the government did not investigate who had filed the applications, much less prove that he had done it or that he even knew the source of the pandemic relief funds in his account. On this record, the court instructed the jury that it could find that Potokri knew that the funds deposited into his account were stolen if he knew of the fraud or if he "had every reason to know but deliberately closed his eyes."

On appeal, Potokri argues that there was no basis for a deliberate ignorance instruction since the government could not prove that he saw that the deposits at issue were identified as "MADUA Cares Act" in the transaction history in his bank account, and since he had no reason to be suspicious of the transactions because one of the victims, Murray, had assigned valid benefits payments to Potokri's account in exchange for a car.[1] We disagree.

There was sufficient evidence introduced at trial of Potokri's deliberate ignorance about the source of the funds deposited into his account. Among other things, the government showed that

---

[1] We note, as an initial matter, that Potokri properly preserved a challenge to the district court's deliberate ignorance instruction by objecting to it multiple times prior to its issuance to the jury. *See United States v. Riggs*, 967 F.2d 561, 565 (11th Cir. 1992) (holding that to preserve an objection for appeal, defendants "should raise that point in such clear and simple language that the trial court may not misunderstand it" (quotations omitted)).

Potokri had checked the bank balance in his savings account repeatedly during the days at issue -- 13 times on the day he received the MADUA payments while checking the account only 5 and 6 times the two previous days -- and immediately began transferring funds out of his savings account once the deposits arrived, suggesting he anticipated the deposits' location and timing, as the applicant himself would, regardless of whether he looked at the transaction history. The government also offered evidence that Potokri opened the savings account only 21 days before the deposits and that immediately prior to the deposits, he had only $1.70 in the account, suggesting that the account was not intended to serve Potokri's general banking needs but only to receive these specific deposits.

As for the alleged car transaction with Murray, Potokri had provided paperwork to investigators, but it was dated two years earlier, in 2018, and none of it substantiated his claim that Murray was to transfer his UA benefits to Potokri. On this record, viewing the evidence in the light most favorable to the government, there was ample circumstantial evidence to support a finding that Potokri was deliberately ignorant about the source of the funds in his account, even if he did not file the MADUA application himself.

As for our warning in *Rivera* -- that courts should not overuse the deliberate ignorance instruction to convict a defendant based on what he "should have known," 944 F.2d at 1570 -- the district court took care in this case to avoid that result. As the record reveals, the court discussed the appropriateness of the instruction at length with counsel, and its instructions "emphasize[d]" that the

government had to show beyond a reasonable doubt that the defendant acted deliberately to stay ignorant; "that negligence, carelessness, or foolishness is not enough to prove that the Defendant knew that funds were stolen"; and that the defendant must have every reason to know that a fact is true and act intentionally to avoid knowledge. And while Potokri objected to the instruction's relevance, he admitted that the instruction was correct as a general matter of law. Thus, the court ensured that the jury either found evidence of actual knowledge or deliberate ignorance, not mere negligence, to support its guilty verdict.

But, in any event, even if the court erred in issuing the deliberate ignorance instruction, any error was harmless. The district court also instructed the jury on the theory of actual knowledge -- making clear that knowledge was a required element of the offense -- and there was more than enough evidence to support that finding. At trial, Jennifer Lavin, MADUA's UA program coordinator, testified that Massachusetts had the most generous pandemic UA program in the country and that the fraudulent applications in Murray's and Reed's names were virtually identical and calibrated to result in the maximum benefits payments into Potokri's account, suggesting someone knowledgeable targeted the state and designed both applications. Documents entered into evidence confirmed the information in the applications, the account information, and the disbursements. They also substantiated the timing of the opening of the account, the limited duration and funds in the account, and Potokri's monitoring of the account, which, as we've noted, dramatically increased on the day of the MADUA payments.

In addition, when Potokri told investigators the story about the car transaction and later produced unrelated documentation to try to shore up his story, he showed an awareness that he should not be receiving the deposits.  And, as we've noted, the deposits were listed as originating from "MADUA CARES Act."  On this record, the evidence was sufficient to give rise to a finding of actual knowledge as well.

### III.

We are also unconvinced by Potokri's claim that his sentence is procedurally unreasonable.  In reviewing sentences for procedural unreasonableness, we "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'"  *Pugh*, 515 F.3d at 1190.[2]   In addition, a sentence can be unreasonable if it was

---

[2] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

substantially affected by the consideration of impermissible factors. *United States v. Clay*, 483 F.3d 739, 745 (11th Cir. 2007).

In *Velasquez Velasquez*, we found unreasonable a nine-month sentence the district court had imposed following the revocation of a defendant's supervised release. 524 F.3d at 1249–53. Noteworthy there, the district court had made comments suggesting that its sentencing decision was not tied to the *de minimis* supervised release violation before it. Rather, as our Court explained, the district court had imposed Velasquez's sentence as if it were reviewing and overturning an immigration judge's decision to release Velasquez on bond pending the resolution of his asylum proceedings, thereby attempting to usurp the role of the executive branch. *Id*. at 1252 & n.3. In remanding the case, we explained that "a judge may not impose a more severe sentence than he would have otherwise based on unfounded assumptions regarding an individual's immigration status or on his personal views of immigration policy." *Id*. at 1253. We instructed the court, on remand, to "impose a sentence based on the individualized facts and circumstances of the defendant's case bearing upon the sentencing considerations enumerated in § 3553(a)." *Id*.

In *Alleyne v. United States*, the Supreme Court concluded that any fact that aggravates the range of sentences authorized by statute is an element of the offense that must be found by the jury. 570 U.S. 99, 114–15 (2013). The Supreme Court nevertheless held that a jury does not have to find *every* fact that may influence judicial discretion. *Id*. at 116. It affirmed the principle that a district court's

exercise of discretion, informed by judicially-found facts, does not violate the Sixth Amendment. *Id.* Following *Alleyne*, we have held that "a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence -- so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict." *United States v. Charles*, 757 F.3d 1222, 1225 (11th Cir. 2014).

When imposing a sentence, the district court is not required to state on the record that it has explicitly considered each of the 18 U.S.C. § 3553(a) factors if the record reflects the district court's consideration of the § 3553(a) factors. *United States v. Cabezas-Montano*, 949 F.3d 567, 609 (11th Cir. 2020). So, an acknowledgment by the district court that it considered the § 3553(a) factors is sufficient. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007). Further, a failure to discuss mitigating evidence does not indicate that the court "erroneously 'ignored' or failed to consider this evidence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). "[T]he adequacy of a district court's findings and sentence explanation is a classic procedural issue, not a substantive one." *United States v. Irey*, 612 F.3d 1160, 1194 (11th Cir. 2010) (*en banc*).

Potokri has not shown that his sentence is procedurally unreasonable. For starters, the district court did not improperly rely on Potokri's immigration status in imposing his sentence. Unlike in *Velasquez Velasquez*, the district court here did not misstate Potokri's immigration status, which was an undisputed fact in the presentence investigation report. Nor did the court suggest that it

imposed a more severe sentence than it otherwise would have based on its personal views of immigration policy.  Rather, the district court's discussion focused on the nature of the offense -- that Potokri had stolen federal and state funds in the United States during the pandemic, a time of great need, and diverted that money overseas -- and sentenced him based on the facts of the crime before it.  In particular, when discussing Potokri's immigration status, the district court commented that he was "a guest who overstayed his welcome" and "[s]ome people also may suggest that a foreign national stealing from the Government during an emergency of the pandemic seems more egregious."

In other words, when viewed in their totality, the court's comments were tied to the crime at issue, stressing that it sought to deter Potokri and others from "commit[ing] fraud on the Government when the Government wants to help people" in a national crisis.  Thus, unlike the district court in *Velasquez Velasquez*, the court here did not effectively usurp the executive branch in its consideration of Potokri's immigration status but incorporated it into its assessment of the nature of the offense squarely before it.

Moreover, the court did not improperly rely on the mandatory minimum sentence for aggravated identity theft when imposing Potokri's sentence.  Indeed, the court never said that Potokri was guilty of aggravated identity theft nor did it issue any judicial findings of fact that changed the minimum or maximum penalties authorized by the jury verdict.  Instead, the court limited its inquiry to the permissible consideration of whether a similar sentence

would adequately deter those who would commit Potokri's offense, noting that perpetrators of fraud, like Potokri, are likely more sophisticated than other offenders and therefore more responsive to deterrence. Potokri has not pointed to anything to indicate that the district court could not exercise its judicial discretion in this way, nor has he otherwise shown that his sentence was procedurally unreasonable.

## IV.

Finally, we find no merit to Potokri's claim that his sentence was substantively unreasonable. In imposing a sentence, the district court must consider the § 3553(a) factors as well as the particularized facts of the case and the guideline range. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1259–60 (11th Cir. 2015). We've underscored that we must give due deference to the district court to consider and weigh the proper sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). This means that the district court does not have to give all the factors equal weight and is given discretion to attach greater weight to one factor over another. *Rosales-Bruno*, 789 F.3d at 1254.

However, a district court abuses its discretion and imposes a substantively unreasonable sentence when it: "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189 (quotations omitted). In addition, a sentence that "is grounded solely in one factor" may be

unreasonable. *Pugh*, 515 F.3d at 1194. Nevertheless, we will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id*. at 1191 (quotations omitted). The party challenging the sentence bears the burden of establishing that it is unreasonable based on the facts of the case and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The sentencing court has wide discretion to conclude that the § 3553(a) factors justify a variance. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *abrogated on other grounds by Van Buren v. United States*, 141 S. Ct. 1648 (2021). A major variance must be supported by more significant reasoning than a minor one, but the court need not discuss each factor. *Gall v. United States*, 552 U.S. 38, 50 (2007). Further, conduct that did not yield a conviction can serve as the basis for an upward variance. *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). Even if an upward variance is imposed, when the sentence is well below the statutory maximum for the offense, it is "indicative of a reasonable sentence." *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

In determining what sentence to impose, a district court may "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972). As for the personal characteristics of the defendant, a court

generally may use any information "concerning the background, character, and conduct of a person convicted of an offense." 18 U.S.C. § 3661. We've explained that this factor is intended to distinguish among defendants who commit a particular offense or type of offense. *Irey*, 612 F.3d at 1202. For example, the district court may consider that the defendant failed to accept responsibility for his actions, failed to show remorse, and would likely be a recidivist if released. *See United States v. King*, 751 F.3d 1268, 1281 (11th Cir. 2014). We've also recognized that a defendant's lack of remorse bears upon the need to promote respect for the law and the need to protect the public. *United States v. McNair*, 605 F.3d 1152, 1231 (11th Cir. 2010).

Here, the district court did not abuse its discretion when it sentenced Potokri to a 48-month sentence, which included an upward variance of 32 months. As we've discussed, the court emphasized the nature and circumstances of Potokri's offense, pointing out that Potokri stole UA benefits during a pandemic from a program that the government designed to help people in need. *See* 18 U.S.C. § 3553(a). In so doing, the district court considered the filing of Reed's UA benefits application that had been unsuccessful, noting that it was further evidence of the defendant's knowledge of the fraud -- which was not improper, since the court was permitted to consider uncharged conduct. As for the court's decision to give Potokri, who refused to accept responsibility, a harsher sentence than someone who does, we've said that this too is a permissible consideration that bears on the need to promote respect for the law, and the need to protect the public.

The district court then addressed what type of sentence may be appropriate, observing that those who commit aggravated identity theft, a similar fraud, are subject to a mandatory minimum two years' imprisonment because Congress had decided that perpetrators of fraud -- like Potokri -- are generally responsive to deterrence. Again, the need for deterrence is a permissible consideration in sentencing. In addition, the court noted that even if Potokri were to be removed from the country and did not need to be personally deterred from reoffending, it intended for Potokri's longer sentence to send a message to others -- deterring them from stealing government funds intended to help people -- which also is a valid consideration.

Finally, as we've noted, the court's references to Potokri's immigration status consistently were tied to the facts of the crime he had committed. So, in context, they amounted to a personal characteristic that falls within the virtually unlimited factors the court can consider in distinguishing between defendants convicted of the same offense. And while Potokri argues that the court imposed an additional year's imprisonment on the basis of his immigration status alone, the record instead reflects that the court more generally was concerned that Potokri had stolen government funds in the United States during a pandemic and sent them overseas.

All in all, the record before us includes a detailed explanation from the district court of the sentence it imposed -- and the substantial upward variance -- with reference to multiple § 3553(a) factors, including the nature and circumstances of Potokri's offense,

the need to promote respect for the law, the need to protect the public, the need to deter others from similar conduct, and Potokri's personal characteristics. Because the district court justified its decision at length and imposed a sentence well below the statutory maximum, we cannot say that the sentence is substantively unreasonable. Accordingly, we affirm.

**AFFIRMED.**